COGER v MACKINAW PRODUCTS COMPANY

1. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—DIRECTED VERDICT—EV-
    IDENCE.

    The entry of a directed verdict in favor of a defendant which is
    based upon a plaintiff's contributory negligence is only proper
    where from the evidence presented all reasonable men would
    agree that plaintiff was guilty of no care at all (GCR 1963,
    515.1).

2. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—OBVIOUS DANGER—DUE
    CARE.

    The obvious danger rule that a plaintiff who is aware of a risk
    and fails to protect himself from injury is contributorily negli-
    gent if injury occurs must be considered in conjunction with
    the modern tort concept that awareness alone does not pre-
    clude negligence; a danger may be obvious but not appreciated,
    and even where a danger is appreciated, circumstances may
    cause it to be momentarily forgotten; it is also possible for the
    accident to occur even though the injured party proceeds
    cautiously in the face of an obvious danger.

3. NEGLIGENCE—SIMPLE TOOL—LOG SPLITTER.

    A log splitter with a gasoline engine applying a 2,000 pound force

REFERENCES FOR POINTS IN HEADNOTES

[1] 57 Am Jur 2d, Negligence § 297.
[2] 57 Am Jur 2d, Negligence §§ 325, 329.
    Momentary forgetfulness of danger as contributory negligence. 74
    ALR2d 950.
[3] 57 Am Jur 2d, Negligence §§ 37, 116, 125, 126.
[4] 57 Am Jur 2d, Negligence § 438.
    63 Am Jur 2d, Products Liability §§ 50, 53.
    Manufacturer's or seller's duty to give warning regarding product
    as affecting his liability for product-caused injury. 76 ALR2d 9.
[5] 63 Am Jur 2d, Products Liability § 181.
[6–8] 31 Am Jur 2d, Expert and Opinion Evidence § 31.
    Review on appeal of decision of trial court as to qualification or
    competency of expert witnesses. 166 ALR 1067.
[8] 31 Am Jur 2d, Expert and Opinion Evidence § 48.
[9, 10] 22 Am Jur 2d, Damages §§ 93–96.
[10] 22 Am Jur 2d, Damages § 349.

to a ram is not a simple tool whose character is so uncomplicated and obvious that need for warnings or safety devices is precluded.

4. PRODUCTS LIABILITY—FORESEEABLE INJURY—SAFETY DEVICES.

A manufacturer when designing a product is under a duty to use reasonable care to guard against unreasonable or foreseeable risks; and where an injury is reasonably foreseeable, it is for the jury to determine whether as a practical matter a safety device should have been put on the product by the manufacturer.

5. PRODUCTS LIABILITY—FORESEEABLE INJURY—LOG SPLITTER.

An injury to a worker's hand on a log splitter was reasonably foreseeable where the log splitter was susceptible to operation by more than one person, which greatly increased the chance for human error and oversight, the machine's engine was noisy, and because of the attendant vibrations and narrowness of the bed on which the whole logs were placed, it was often necessary to hold the logs in position until they met the wedge which split them.

6. WITNESSES—EXPERT WITNESSES—DISCRETION.

The determination whether an expert witness is qualified to testify rests within the sound discretion of the trial court and the Court of Appeals will only interfere to correct an abuse of that discretion.

7. WITNESSES—EXPERT WITNESSES—DISCRETION.

A trial court did not abuse its discretion in permitting plaintiff's expert, a metallurgical engineer certified as a Safety Professional by the American Society of Safety Engineers, who specialized in the reconstruction of accidents involving power presses, to testify regarding the safety devices adaptable to a log splitter, where the witness testified that he was familiar with the principles governing the design of power presses, from an examination of the log splitter the expert found that the log splitter contained all the essential operational factors in common with a power press, and based upon this similarity, the witness opined that the safety guards available for power presses were appropriate for a log splitter; and where defendant offered little in the way of effectively disputing the similarities between the log splitter and a power press.

8. EVIDENCE—EXPERT WITNESS—SAFETY CODE—WITNESS TESTIFYING—ADMISSIBILITY—CROSS- EXAMINATION—DISCRETION.

A trial court did not abuse its discretion by allowing an expert

witness to testify concerning a USA Safety Code where a proper foundation for admission of the code was established by the expert witness's testimony and the expert witness was on hand at trial and was cross-examined at length by the defendant.

9. DAMAGES—MEASURE OF DAMAGES—EARNING CAPACITY—IMPAIRMENT.

The measure of damages where a party's earning capacity has been impaired is not what he probably would have earned but rather what in absence of the disabling injury he could have earned in the future by pursuing any occupation he had held prior to the injury.

10. DAMAGES—PROSPECTIVE DAMAGES—PRESENT WORTH—APPEAL AND ERROR.

The failure of the attorneys in a personal injury case to stipulate to abide by the jury's gross verdict and of the trial court to instruct the jury to reduce any prospective damages by computation of present worth was error; the case is remanded to the circuit court with instructions to reduce the plaintiff's prospective damage award to its present worth.

Appeal from Otsego, Dennis J. O'Keefe, J. Submitted Division 3 March 6, 1973, at Grand Rapids. (Docket No. 14076.) Decided June 27, 1973.

Complaint by Daniel S. Coger against the Mackinaw Products Company for damages for personal injuries received in the operation of a log splitter designed and manufactured by defendant. Verdict and judgment for plaintiff. Defendant appeals. Affirmed and remanded with instructions.

*Zerafa & Zerafa,* for plaintiff.

*Gillett & Carpenter,* for defendant.

Before: R. B. BURNS, P. J., and T. M. BURNS and PETERSON,* JJ.

* Circuit judge, sitting on the Court of Appeals by assignment.

T. M. BURNS, J. This is a products liability case which centers upon a mechanical log splitter designed and manufactured by the defendant. The log splitter is a gasoline powered machine consisting of a ram which, when activated by the control lever located above and behind the ram, splits a log by forcing it into a wedge-shaped blade. The base or rail upon which the whole logs are placed is approximately 4 inches in width and measures 36 inches in length between the ram and the blade.

Plaintiff was employed by the United States Plywood Corporation in Gaylord, Michigan. On January 21, 1966, plaintiff and two co-workers were splitting logs with the aforementioned device. Plaintiff was engaged in placing whole logs on the rail between the ram and the wedge and stacking the pieces once the logs were split. A second employee was likewise occupied on the opposite side of the machine. The third employee operated the control lever which activated the ram and forced the logs against the wedge. Approximately a half-hour passed without mishap when as plaintiff was centering a log on the rail, the lever operator set the ram in motion and crushed plaintiff's right hand between the log and the wedge. As a result, plaintiff's right thumb, first finger and part of the palm were amputated in a subsequent series of operations. At the time of the accident plaintiff was 18 years old. He had previously worked with the log splitter and was familiar with it.

Ten months after the accident, plaintiff returned to work at United States Plywood Corporation in Gaylord. Since he was no longer able to do any heavy work, he was employed in a janitorial capacity. Plaintiff disliked this type of work and after a few months quit to take a position as a filling station attendant and mechanic.

In January of 1969, plaintiff filed suit seeking $156,400 in damages alleging *inter alia* that the negligent design and manufacture of the log splitter was the proximate cause of his injury. Defendant replied charging that the contributory negligence of plaintiff, negligence on the part of the lever operator and the alterations in the machine's design were the proximate cause of plaintiff's impairment.

At trial plaintiff took the stand and testified that due to the width of the rail on which the whole logs were placed coupled with the vibrations of the gasoline engine, it was necessary to guide the log on the rail during the splitting operation. Plaintiff admitted, however, that the accident did not occur while the log was being guided on the rail. Plaintiff stated he was aware of the obvious danger and injury that would result if a hand was caught between the wedge and a log. He then described the accident as follows:

"I was setting the log on and had set the left end of the log down and was removing my hand from the right end of the log—my right hand—when the machine started and I yelled to Warren to stop, and he stopped it but my hand was already crushed on the wedge."

Plaintiff also produced a safety design engineer as an expert witness. For purposes of qualification, a voir dire type examination of the witness was conducted. At the conclusion of the examination, the trial court ruled that the witness was qualified to testify. Upon recalling the jury, the witness recounted his prior employment and experience in investigating power press accidents and his examination of the log splitter. Based upon § 2.19 of the USA Standard Safety Code, which defines the

elements of a power press,[1] the witness found that the log splitter met the definition and the various guard-type safety devices described in Federal Department of Labor Bulletin #197, admitted as plaintiff's exhibit #8, were adaptable to the log splitter, none were found on the log splitter, and that had these safety devices been employed, the accident would not have occurred. He also stated that the warnings set out in the log splitter's instruction manual were limited to pointing out the fact that the wedge was sharp.

In addition, the physician who treated plaintiff's injury testified relative to the various operations performed on plaintiff's hand and indicated the possibility of future pain from the injury.

At the close of plaintiff's proofs defendant moved for a directed verdict. GCR 1963, 515.1. The trial court reserved its ruling and at the close of defendant's proofs denied the motion.

After plaintiff had rested, defendant called the designer of the log splitter to the stand. He testified that he designed the log splitter in 1963 and wrote the operating and maintenance manual. He described the manner in which the log splitter worked and discussed the fact that the height of the wedge on the splitter was 8 inches as contrasted with the 16-inch wedge found on the machine at the time of the accident. The witness indicated that as a consequence of such an alteration, there would be a tendency for the machine to stall. It was not stated that the alteration would

---

[1] "2.19 Power Press. A powered machine for working on metal or metal material by use of cutting, shaping or combination of dies attached to plungers, platens or slides (ram). A press consists of a stationary bed or anvil or slide, which has a controlled reciprocating motion toward and away from the bed surface and at right angles to it, the slide being guided in the frame of the machine to give a definite path of motion."

contribute any other hazard, and we note at this point that plaintiff's hand was caught on the lower 8 inches of the wedge. The designer further testified that 4 safety features were incorporated into the log splitter: namely, (1) a plastic ball was placed atop the control lever to prevent it from hurting the operator's hand, (2) the control lever was removable to render the machine inoperative when left unattended, (3) a two-speed pump was employed to slow the speed of the log splitter when the wedge encountered a knot or the like, and finally (4) a lip was placed on top of the wedge to prevent the log from passing over it. The witness continued by stating that although he had safety in mind when he designed the log splitter, he had no formal education in design safety and he did not consult any safety standards when constructing the machine. While the witness admitted that the log splitter possessed components corresponding to the various elements contained in the USA Standard Safety Code definition of a power press, see footnote 1, *supra,* he attempted to distinguish the log splitter from a press. Throughout his testimony he indicated that the safety devices suggested by plaintiff's expert witness were impractical because such appliances would inhibit production and decrease profits.

Following the proofs, closing arguments, and the court's instructions, the jury returned a verdict in favor of the plaintiff for $156,400. Subsequently, defendant filed timely alternative motions for a judgment notwithstanding the verdict and a new trial. After considering the briefs and arguments submitted, the trial court denied the motions. Defendant appeals.

First defendant argues that plaintiff was guilty of contributory negligence as a matter of law and

that the trial court erred in refusing to grant a directed verdict on that ground. We disagree.

The entry of a directed verdict in favor of a defendant which is based upon a plaintiff's alleged contributory negligence is only proper where from the evidence presented all reasonable men would agree that plaintiff was guilty of "no care at all". *Normand v Thomas Theatre Corp,* 349 Mich 50, 57; 84 NW2d 451, 454 (1957); GCR 1963, 515.1.

Defendant's allegation of contributory negligence is bottomed upon the fact plaintiff was familiar with the operation of the log splitter, he failed to watch either the ram or the lever operator and neglected to establish a set of hand signals with the lever operator. However, from the evidence presented, it is equally reasonable to assume that it was necessary for plaintiff to focus his attention on where he was placing the logs on the machine thereby foreclosing the opportunity to watch the lever operator or employ hand signals. This Court recently considered an analogous situation in *Byrnes v Economic Machinery Co,* 41 Mich App 192, 202; 200 NW2d 104, 109 (1972), wherein an employee started an automatic labeling machine manufactured by the Economic Machinery Company and injured a second employee who at the time was repairing the internal workings of the machine. The defendant relied on the obvious danger rule to obtain a directed verdict. In reversing the directed verdict entered in favor of the defendant, we observed:

"It is true that plaintiff was aware of the risk and that many cases find no duty where the danger is obvious. This requirement must be considered in conjunction with the modern tort concept that awareness alone does not preclude negligence. A danger may be obvious but not appreciated. Even where a danger is

appreciated, circumstances may cause it to be momentarily forgotten. It is also possible for the accident to occur even though the injured party proceeds cautiously in the face of an obvious danger."

In view of the foregoing, it is clear that reasonable men could differ in finding whether plaintiff was guilty of no care at all. Accordingly, the circuit court did not err in refusing to direct a verdict in favor of the defendant and permitting the question of plaintiff's contributory negligence to go to the jury.

Second, defendant relying upon *Fisher v Johnson Milk Co, Inc,* 383 Mich 158; 174 NW2d 752 (1970), asserts that it was under no obligation to render the log splitter "more safe" since its danger was obvious to all. From this defendant argues that it was entitled to a directed verdict as a matter of law on the question of the log splitter's safety design. Again, we cannot agree.

In *Fisher* plaintiff slipped and fell on an icy street as he was carrying several bottles of milk in a wire carrier. Upon impact with the street, the bottles shattered and plaintiff suffered severe lacerations as he fell upon the jagged pieces of glass. Plaintiff brought suit attacking the design safety of the wire carrier. The Supreme Court, in affirming a directed verdict entered in favor of the defendant, found the wire carrier akin to a simple tool whose character was so uncomplicated and obvious it precluded the need for warnings or safety devices.

Under the rationale of *Fisher,* defendant would have us equate its log splitter with the simple hammer and wedge used during Lincoln's rail splitting days. This we cannot do. Although the principles of the hammer and wedge are not complex, defendant incorporated these principles into

a complicated mechanical contrivance which increased the danger and risks involved manyfold. For example a gasoline engine as opposed to a human hand applied the force to the ram. The force itself was described as exceeding 2,000 pounds. Therefore, it is readily apparent that the log splitter in question was not a simple tool within the contemplation of *Fisher*. Thus *Fisher* has no application to the case at bar.

In addition defendant's argument rests heavily on the fact that hazards encountered by the plaintiff were patent and that no concealed defect was responsible for plaintiff's injury.

Where, as here, plaintiff challenges the safety design of a product, the claims fall into three broad classifications which are: (1) the design incorporated a concealed hazard (2) the material used in the product was of inadequate strength or quality and (3) a needed or reasonably required safety device was not employed. *Parsonson v Construction Equipment Co,* 386 Mich 61, 63–64; 191 NW2d 465, 466 (1971). While *Parsonson* was concerned with the first category, the instant case centers upon the third category—that is plaintiff alleges a needed or reasonably required safety device was not employed in the design of the machine. Therefore defendant's almost total reliance on the latent-patent distinction is misplaced.

When designing a product, the manufacturer is under a duty to use reasonable care to guard against unreasonable or foreseeable risks. *Byrnes, supra* at 201. Where an injury is reasonably foreseeable, it is for the jury to determine whether as a practical matter a safety device should have been put on the product by the manufacturer. *Jennings v Tamaker Corp,* 42 Mich App 310; 201 NW2d 654 (1972), *leave to appeal denied* 388 Mich 784 (1972).

A review of the record reveals that the log splitter was susceptible to operation by more than one person which greatly increased the chance for human error and oversight. The proofs also indicate that the machine's engine was noisy and that due to the attendant vibrations and narrowness of the bed on which the whole logs were placed, it was often necessary to hold the logs in position until they met with the wedge. In light of these facts, we are of the opinion that injury to a worker's hand was reasonably foreseeable. Plaintiff's expert witness was of the opinion various safety devices were available to protect against this hazard. The designer of the machine on the other hand stated such devices were impractical. Clearly from these conflicting points of view, a jury question arose as to whether it was feasible for the manufacturer to have installed the suggested safety appliances. Since a jury question was posed, the trial court was correct in denying defendant's motion for a directed verdict on the question of the log splitter's safety design.

Third, defendant asserts that plaintiff's expert witness was not qualified to testify in relation to accidents involving log splitting machines and that the trial court erred in permitting the witness to so testify.

It is axiomatic that the determination of whether an expert witness is qualified to testify rests within the sound discretion of the trial court. We will only interfere to correct an abuse of that discretion. *Losinski v Ford Motor Co,* 43 Mich App 114, 119; 204 NW2d 49, 52–53 (1972).

The record in the instant case reveals that the expert witness held B.S., M.S., and Ph.D. degrees in metallurgical engineering, was certified a Safety Professional by the American Society of Safety

Engineers, and specialized in the reconstruction of accidents involving power presses. The witness testified that he was familiar with the principles governing the safety design of power presses. From an examination of the log splitter, he found that the defendant's log splitter contained all the essential operational factors in common with a power press. This conclusion was based on a definitional component breakdown of a power press as set forth by the USA Standard Safety Code, see footnote 1, *supra*. Based upon this similarity, the witness opined that the safety guards available for power presses were appropriate for defendant's log splitter and had they been utilized, plaintiff would not have been injured. Save for a distinction in names, defendant offered little in the way of effectively disputing the similarities between the log splitter and a power press.

In the face of the witness's qualifications and the reasoned basis for his conclusions, we hold that the trial court did not abuse its discretion in permitting the witness to testify regarding the safety devices adaptable to the log splitter.

Next the defendant asserts that the trial court abused its discretion by permitting plaintiff's expert witness to testify about the USA Standard Safety Code.

The primary objection to the admissibility of safety codes promulgated by governmental bodies or voluntary associations is that where a proper foundation has not been laid and no expert witness is on hand at trial to vouch for this evidence, the opposing party is foreclosed from any cross-examination as to whether the suggested practices contained in a code are the customary or optimum precautions to be employed. *Thompson v Essex Wire Co,* 27 Mich App 516, 534–535; 183 NW2d

818, 827–828 (1970). It was precisely on the foregoing ground that a book entitled *Prevention Manual for Industrial Operations* published by the National Safety Council was deemed inadmissible in *Thompson.*

In the case at bar, however, a proper foundation for admission of the USA Standard Safety Code was established by the expert witness's comparison of the log splitter to power presses as defined by the code and the expert witness was on hand at trial and was cross-examined at length by the defendant. Accordingly, we find the trial court did not abuse its discretion by allowing the plaintiff's expert witness to testify concerning the USA Standard Safety Code. See also McCormick, Evidence (2d ed), § 321, p 745.

Finally, defendant contends that in light of the evidence presented, the damages awarded the plaintiff for loss of earning capacity were excessive and based upon pure speculation.

Plaintiff sought damages for $156,400, which was divided between $136,400 for loss of earning capacity and $20,000 for pain and suffering. The jury returned a verdict for the entire amount claimed, *i.e.* $156,400. Since defendant does not challenge the damages relating to pain and suffering, that portion of the verdict will not be discussed.

Where, as here, a party's earning capacity has been impaired, the measure of damage is not what he probably would have earned but rather what in absence of the disabling injury he could have earned in the future by pursuing any occupation he had held prior to the injury. *Lorenz v Sowle,* 360 Mich 550; 104 NW2d 347 (1960).

The evidence produced to support the instant plaintiff's damage claim may be summarized as

follows: At the time of the accident plaintiff was 18 years of age and in good health. Workmen's compensation records admitted as plaintiff's exhibit #4 revealed plaintiff was earning $93.01 per week. A fellow employee testified that he and the plaintiff began working at United States Plywood Corporation at approximately the same time, performed the same tasks and were compensated at the same rate of pay. The witness further stated that he was presently employed at United States Plywood and paid $200 per week. The highest amount plaintiff has been able to earn since the accident was $117 per week as a filling station attendant and mechanic. Plaintiff testified that he knew of another employee at the filling station who was similarly employed and earned "around" $150 per week.

Plaintiff claimed that as a result of the injury, his earning capacity was diminished by $50 per week or in other words $2,600 per year. Plaintiff's gross figure of $136,400 was computed by multiplying the yearly figure of $2,600 by the number of years he was expected to live (52 plus years) as taken from the Standard Mortality Table.

The record amply supports plaintiff's damage claim and award in that plaintiff could have stayed at United States Plywood Corporation, a position he held before the accident, and earned $200 per week as had another employee who had started with the plaintiff at the same rate of pay and job classification. However, with the injury, plaintiff took a different job and was able to make only $117 per week. This resulted in a diminution in income of $83 per week or $4,316 per year which is well above the figure claimed by the plaintiff.

Over objection by defense counsel, plaintiff testi-

fied that with two normal hands he could have made $150 a week at a "good garage". Defendant asserts that the admission of the testimony was error in that plaintiff had no general personal knowledge of the fact and gave the figure as a supposed expert. The record indicates, however, that plaintiff knew of a mechanic who earned "around" $150 a week. In any event it is clear that the jury did not use the $150 figure in computing damages since the difference between plaintiff's highest wage and the $150 figure is $33 ($150–$117), whereas plaintiff was awarded in effect $50 a week. Therefore the error, if any, was not prejudicial to the defendant. In view of the foregoing we find that the amount of the verdict was within the range of the proofs. However we note that none of the attorneys herein stipulated to abide by the jury's gross verdict and the trial court failed to instruct the jury to reduce any prospective damages by computation of present worth. This was error. *Currie v Fitting,* 375 Mich 440, 453; 134 NW2d 611, 616 (1965).

Accordingly, the case is remanded to the circuit court with instructions to reduce the plaintiff's prospective damage award by computation of its present worth. In all other respects the case is affirmed.

All concurred.