CASEY v GIFFORD WOOD COMPANY

1. PRODUCTS LIABILITY—PATENT DANGER—LATENT DANGER—SAFETY
   DEVICES—MANUFACTURERS' RESPONSIBILITY.
   Manufacturers are not automatically relieved of responsibility for
   providing safety devices for their products where the danger is
   patent and obvious; manufacturers are not automatically re-
   sponsible for failure to furnish safety devices where the danger
   is latent.

2. PRODUCTS LIABILITY—MANUFACTURERS—UNREASONABLE DANGER—
   FORESEEABLE DANGER—JURY QUESTION—SAFETY DEVICES.
   The test for manufacturer liability in a products liability case is
   whether the danger from which the plaintiff suffered injury
   was unreasonable and foreseeable to the manufacturer, and it
   is for the jury to determine whether as a practical matter a
   safety device should have been a product component where the
   injury was reasonably foreseeable.

3. PRODUCTS LIABILITY—INSTRUCTIONS TO JURY—PATENT DANGER—LA-
   TENT DANGER—MANUFACTURER'S DUTY.
   Instructions to the jury in a products liability case should not be
   couched in terms of whether the danger from which a plaintiff
   suffered injury was latent or patent; however, the jury should
   be informed that the law has not imposed a duty on manufac-
   turers to manufacture accident-proof products.

Appeal from Saginaw, Joseph R. McDonald, J.
Submitted Division 3 February 11, 1975, at Lans-
ing. (Docket No. 19365.) Decided May 28, 1975.

Complaint by Terence Casey against Gifford
Wood Company for damages for injuries sustained
when plaintiff's hand was caught in an ice-crush-

REFERENCES FOR POINTS IN HEADNOTES
[1–3] 63 Am Jur 2d, Products Liability § 37.
   Manufacturer's duty to test or inspect as affecting his liability for
   product-caused injury. 6 ALR3d 91.

ing machine. Judgment for defendant. Plaintiff appeals. Reversed and remanded.

*van Benschoten & van Benschoten, P. C.,* for plaintiff.

*William F. Dillon,* for defendant.

Before: ALLEN, P. J. and T. M. BURNS and R. M. MAHER, JJ.

ALLEN, P. J. This is a products liability case brought against the manufacturer of an ice-crushing machine for injuries sustained when plaintiff's left hand was caught in the machine's moving parts. Plaintiff sued, claiming that when manufactured and sold the machine was not reasonably fit for its intended use because it was not equipped with guards. On December 12, 1973, the jury returned a verdict of no cause of action. Plaintiff appeals.

Plaintiff, then age 17, was hired to operate an ice-seizing machine in Grand Rapids, Michigan. In this job, plaintiff, using ice tongs, would slide 300-to-400-pound chunks of ice along the floor to a mechanical lift, push a button activating a lift which would raise the ice some four or five feet in the air, depositing it on a horizontal slide which sloped gently downward from left to right. At the slide's right end was an open hole somewhat larger than the ice chunk. Gravity would cause the ice block to slide into the open hole which fed directly into a revolving drum with spikes which would seize and crush the ice. A separate button, located some 15 feet from the button which operated the lift, activated the revolving drum. The lift, the slide and the revolving drum with its rotating parts were all manufactured by defend-

ant. Approximately two weeks after plaintiff was employed, a block of ice slid down the gravity slide but would not pass through the open hole. The right end of the ice block was irregular in shape and touched the revolving spikes in the drum, which grooved the block but did not sufficiently catch or grab it to cause it to enter the drum. In an attempt to force the ice chunk into the drum, plaintiff did as he testified at trial:

"Okay, I had my ice tongs open and in a manner something like this, and I would push on that, push on the ice to jiggle it a little bit and start the ice feeding into the machine the way that I had been shown how to do it. And on this particular block of ice, I poked on what was the exposed piece of ice and that was the broken part, just that broken part of the block of ice, and as I pushed on that block, the tongs slipped up, went into the machine, caught under one of the spikes in one end, and hooked onto my glove, pulling my hand in after it."

Preparatory to taking this action, plaintiff did not push the button which would stop the rotating drums.

Testifying by deposition, defendant's expert witness described the equipment as relatively simple and completely safe when used properly. In his expert opinion, guards over the drum entrance were not necessary. He knew of no accident in his company's history with this type of machine. The equipment had properly performed the function for which it was manufactured from its sale to defendant in the spring of 1947 until the date of injury. Defendant's theory of the case was that plaintiff knew of the danger of getting his hands close to the revolving drum and that a proximate cause of the accident was plaintiff's negligence in

sticking ice tongs into the mouth of the rotating drum. Plaintiff's expert witness testified that the machinery was a complex tool, that it was unsafe when manufactured because of the failure to include guards over the drum opening, and that such guards could have been supplied at about $2.50 cost. In instructing the jury on the meaning of implied warranty the trial court gave most of the instruction thereon submitted by plaintiff. In addition, the court included an instruction on implied warranty taken from *Fisher v Johnson Milk Co*, 383 Mich 158; 174 NW2d 752 (1970), and proposed by defendant.[1] The court rejected plaintiff's instruction on obvious danger—an instruction patterned after *Byrnes v Economic Machinery Co*, 41 Mich App 192; 200 NW2d 104 (1972). Objections to the charge were promptly and properly taken.[2] On

---

[1] "[I]f the manufacturer does everything necessary to make a machine function properly for the purpose for which it is designed, if the machine is without any latent defect and if its functioning creates no danger or peril that is not known to the user, then the manufacturer has satisfied the law's demand.

"We have not yet reached the state where a manufacturer is under the duty of manufacturing a machine accidentproof or foolproof, just as the manufacturer is under no obligation in order to guard against injury resulting from deterioration, to furnish a machine that will not wear out, so he is under no duty to guard against injury from a patent peril or from a source manifestly dangerous.

"To illustrate: the manufacturer who manufactures properly and free of defect, an axe or buzzsaw or airplane with exposed propellers is not to be held liable if one using the axe or the buzzsaw is cut by it or if someone is working around the airplane, comes in contact with the propellers. In such cases, the plaintiff has the right to expect that such person will do everything necessary to avoid such conduct for the very nature of the article gives notice and warning of the consequences to be expected or the injury to be suffered; *in other words, the manufacturer is under no duty to render a machine or other article more safe as long as the danger to be avoided is obvious and patent to all.*" (Emphasis supplied.)

[2] *"Mr. van Benschoten:* Yes, I would object to, No. 1, to the charge being taken from the case of *Fisher* versus *Johnson*, 383 Michigan 158, relative to latent, patent defects, because that case was a simple tool doctrine, whereas I think this is not such a case, and this more appropriately comes under *Byrnes* versus *Economic Machinery Company*, 41 Michigan Appeals 192.

"I have submitted other instructions that I wished to have been

appeal to this Court, plaintiff argues that it was error to give the instruction cited in footnote 1.

The jury instruction to which plaintiff took exception, though appearing in *Fisher, supra,* is actually language taken from the landmark case, *Campo v Scofield,* 301 NY 468; 95 NE2d 802 (1950). Interestingly, that case did not involve a simple tool product such as the wire milk-bottle carrier in *Fisher,* but involved a large farm machine, an onion topper attached to a tractor which supplied power for its operation. Set in an iron frame with wooden sides were four hard steel rollers about four feet long whose revolving and grinding accomplished the cutting. Plaintiff's hands became caught in the machine while he was dumping a crate of onions into the machine. Plaintiff claimed products liability because the manufacturer failed to supply any guard which would have prevented the user from coming into contact with the rollers. A similarity to the case before us is obvious. The *Campo* doctrine has been widely followed, with most courts finding *as a matter of law* that "the manufacturer is under no duty to render a machine or other article 'more' safe—as long as the danger to be avoided is obvious and patent to all".[3] *Campo v Scofield, supra,* at 472; 95 NE2d at 804. This doctrine has been widely criticized and, in recent years, has been significantly modified:

"Despite the cirticism by Harper and James that the *Campo* doctrine is 'a vestigial carryover from pre-*MacPherson [MacPherson v Buick Motor Co,* 217 NY 382; 111 NE 1050 (1916)] days when deceit was needed for

given, and that I do not withdraw, and I don't need to comment on them."

[3] Note that the above quotation is identical with the last sentence of the jury instruction quoted in footnote 1.

recovery,' there was minimal judicial reaction against it for 15 years. During the late 1960's, however, a progressive trend emerged. Increasingly, negligent design came to be viewed as a jury question even where the danger was obvious.

\* \* \*

"The trend away from *Campo* is also evident in *Byrnes v Economic Machinery Co.*

\* \* \*

"The *Byrnes* court was confronted with *Fisher v Johnson Milk Co,* a case that recently had been decided by the Michigan Supreme Court. *Fisher* held, as a matter of law, that a wire milk-bottle carrier was not negligently designed, even though it was without a false bottom to prevent breakage. The holding was premised on the fact that the danger in the carrier was obvious. *Fisher* seemed to adopt *Campo* without qualification, \* \* \* . Nevertheless, the *Byrnes* court succeeded in distinguishing the facts before it from the other three cases. It did so by cutting through the rhetoric of the 'latent-defect' rule \* \* \* ." Marschall, *An Obvious Wrong Does not Make a Right: Manufacturers' Liability For Patently Dangerous Products,* 48 NYU L Rev 1065, 1081–1082 (1973).

In *Byrnes, supra,* plaintiff was making adjustments on a labeling machine containing movable parts. Adjustment was made on a trial and error basis until the machine put the labels on properly. While plaintiff's hand was in the machine, a fellow employee activated the equipment. Defendant, relying on the *Campo* rule as stated in *Fisher,* contended that the danger was obvious and that a manufacturer had no duty to protect against injuries obvious and patent to all. This Court reversed the trial court, which had granted summary judgment for defendant. In so doing, this Court made two modifications in the *Campo* doctrine. First, the Court found that the latent-patent distinction was

more properly an issue of whether the risk was unreasonable and foreseeable:

"In reaching their decisions, the courts made much of the need for a latent defect or danger to be present before a duty can be imposed on a manufacturer. In reality, these requirements bear on the unreasonableness of the risk to which one is exposed. Noel, *Manufacturer's Negligence of Design or Directions for Use of a Product,* 71 Yale L J 816, 838 (1962); *Pike v Frank G Hough Co, supra* [2 Cal 3d 465; 85 Cal Rptr 629; 467 P2d 229 (1970)]. If a risk is unreasonable and foreseeable, a duty on the manufacturer's part may arise. In *Fisher v Johnson Milk Co,* 383 Mich 158 (1970), our Supreme Court concluded that the plaintiff was not exposed to a foreseeable unreasonable risk. Therefore, the manufacturer was not subject to liability. Further, the plaintiff in *Fisher* could have avoided the injury by proceeding with caution." *Byrnes v Economic Machinery Co, supra,* 41 Mich App 192, 201.

Second, the Court held that the issue of whether the risk was unreasonable and foreseeable was one which properly should go to the jury. *Byrnes, supra,* 41 Mich App 192, 202.

*Coger v Mackinaw Products Co,* 48 Mich App 113; 210 NW2d 124 (1973), presented a situation similar to *Byrnes,* except that the *Coger* case went to the jury, which found for plaintiff. Plaintiff's hand was injured when, while working on a fairly complicated log-splitting device, a fellow employee activated the splitter while plaintiff's hand was between the log and the wedge. Plaintiff admitted he was aware of the obvious danger but produced an expert witness who claimed the accident would not have occurred if the manufacturer had provided safety devices. Relying upon *Fisher, supra,* (which as we have noted earlier relied upon *Campo)* defendant claimed error because the dan-

ger was obvious and patent. Our Court affirmed, distinguishing *Fisher* as a case where the product was "akin to a simple tool whose character was so uncomplicated and obvious it precluded the need for warnings or safety devices", and adopted the *Byrnes* rationale that the proper test of liability was whether the risk was unreasonable or foreseeable. Additionally, the Court stated:

> "Plaintiff's expert witness was of the opinion various safety devices were available to protect against this hazard. The designer of the machine on the other hand stated such devices were impractical. Clearly from these conflicting points of view, a jury question arose as to whether it was feasible for the manufacturer to have installed the suggested safety appliances. Since a jury question was posed, the trial court was correct in denying defendant's motion for a directed verdict on the question of the log splitter's safety design." 48 Mich App 113, 123.

Having described the history of the law pertaining to the responsibility of a manufacturer to make or not make a product "more safe" by providing safety devices, we now turn to the decisive issue in this case—was that portion of the jury instruction given in this case, to which defendant objects, proper? If not proper, what is a correct charge? In answering this question we initially observe that while the mechanical principles involved in the ice crusher and loader are simple, the finished product is by no means simple. It consists of multiple parts, with a separate electrical system. It contains moving parts, some of which are dangerous. It is capable of hoisting 300 pounds or more several feet above the ground. Compared with the wire milk-bottle carrier involved in *Fisher*, it is complex. Clearly, it is distinguishable from *Fisher*. But this distinction, that

the product here is a complex tool, though still relevant, is no longer the standard under which the manufacturer's liability is determined. As was stated in *Byrnes* and reaffirmed in *Coger,* the test of liability is whether the risk is unreasonable and foreseeable. If so, a duty on the manufacturer's part may arise.

We also note that despite the changes made by *Byrnes* and *Coger,* manufacturers are still not required to furnish accident-proof machinery. This is precisely what the trial court attempted to inform the jury of in the instructions to which plaintiff has taken exception.[4] With important qualifications hereinafter noted, those instructions still constitute a helpful and useful explanation of products liability law and should be included in jury instructions in products liability cases. We further note that in one important respect the trial court followed the modifications to the *Campo* latent-patent doctrine which were made in *Brynes* and *Coger.* The trial court allowed the issue of whether the product was reasonably fit for the use intended to go to the jury. Because the issue did go to the jury and because the jury found in the manufacturer's favor, defendant contends there is no error. We do not agree.

The central issue in this case, other than the issue of plaintiff's contributory negligence, was whether defendant's failure to supply a guard or guards over the drum opening created an unreasonable and foreseeable risk to the users or workers employed to use the machinery. Having stated this as the issue, the court immediately proceeded to tell the jury in the italicized portion of the charge appearing in footnote 1, that there was no duty to place guards or safety devices on the

---

[4] The instruction in footnote 1.

equipment if the danger to be avoided was obvious and patent to all. Based on the facts in this case, the jury could easily conclude that the only danger in the equipment was the open mouth of the drum with its rotating spikes, that this danger was clearly obvious to anyone working with the equipment, and that because the trial court instructed them that the manufacturer was not under a duty to make its product "more safe", *i.e.,* install guards where the danger was obvious, the defendant could not be held legally responsible. If this indeed were the rationale followed, the jury would never reach the other key issue of contributory negligence. Error is not cured by submitting the question to the jury if, in submitting the issue, the jury is given an improper test to apply.

In Michigan, the manufacturer of a product is not automatically relieved of the responsibility of providing safety devices merely because the danger causing the injury is obvious and patent as per *Campo.* Neither is the manufacturer automatically liable if it fails to furnish such devices. The test of liability is no longer the latent-patent rule but whether the danger from which the plaintiff suffered injury was unreasonable and foreseeable. This usually is a jury question. Instructions to the jury should be couched in these terms rather than the latent-patent terms. Because they were not so couched we find error. If the injury is reasonably foreseeable, it is for the jury to determine whether, as a practical matter, a safety device should have been a product component.

"When designing a product, the manufacturer is under a duty to use reasonable care to guard against unreasonable or foreseeable risks. *Byrnes, supra,* at 201. Where an injury is reasonably foreseeable, it is for the jury to determine whether as a practical matter a

safety device should have been put on the product by the manufacturer." *Coger v Mackinaw Products Co, supra,* 48 Mich App 113, 122 (1973).

In the course of his instructions, the trial judge did ask the jury to determine whether failure to place guards on the product created an unreasonable risk but, in the next sentence commencing with "[i]n this regard", the court told the jury that if the product had no latent defect and created no danger that was not known to plaintiff, the defendant had satisfied the law's demand.[5] We find that portion of the instruction, quoted below, in error. Upon retrial, instructions in accordance with this opinion should be given.

We do not hold that all of the trial court's instruction recited in footnote 1 is improper. The jury should be informed that the law has not yet imposed a duty on the manufacturer to make accident-proof machinery. It is only those portions of the trial court's instruction which adopt the latent-patent rule which we find objectionable. Contributory negligence remains a defense. In this regard, we are well aware that the jury may have determined in the first trial, or upon retrial might conclude that, irrespective of the duty imposed upon the manufacturer to supply guards, the proximate cause of the injury was plaintiff's own negligence.

Finally, in respect to the trial court, we observe that at the date of trial in this case, the decision

[5] "[I]f you find this to be the case, to place adequate guards upon the machinery created an unreasonable risk to the users or workers who were employed to use this machinery. In this regard, I charge you as follows: if the manufacturer does everything necessary to make a machine function properly for the purpose for which it is designed, if the machine is without any latent defect and if its functioning creates no danger or peril that is not known to the user, then the manufacturer has satisfied the law's demand."

in *Coger,* upon which this Court so strongly relies, had so recently been published that its implications and full meaning were not available to the court below. As has been observed before, appellate work does have this advantage.

Reversed and remanded for a new trial in accordance with this opinion. Costs to plaintiff.