ANTCLIFF v STATE EMPLOYEES CREDIT UNION

Docket No. 78-1537. Submitted May 1, 1979, at Lansing.—Decided
February 5, 1980. Leave to appeal applied for.

Howard Antcliff was permanently and totally disabled when a
scaffold upon which he was working fell to the ground. The
accident occurred at the construction site of the State Em-
ployees Credit Union building in Lansing. Antcliff's wife Geral-
dine and Antcliff, by his guardian (Geraldine), brought an
action for damages against the State Employees Credit Union;
Christman Construction Company, Inc., the general contractor;
Manson, Jackson & Kane, Inc., the architects; and Spider
Staging Sales Company, Inc., the manufacturer of the scaffold.
Christman brought a third-party complaint for indemnification
against Austins Painters Flint, Inc., Antcliff's employer. Prior
to trial, plaintiffs settled with Christman and released the
credit union and the architect. Thus, the only defendant at the
time of trial was Spider, against whom the plaintiffs proceeded
on theories of negligence and breach of express and implied
warranties. The Ingham Circuit Court, Jack W. Warren, J.,
entered a judgment on a jury verdict of no cause of action, and
plaintiffs appeal. *Held:*

    1. The cause of the accident was the failure of a wooden

REFERENCES FOR POINTS IN HEADNOTES

[1] 63 Am Jur 2d, Products Liability §§ 63, 132.
    Manufacturer's or seller's duty as to product design as affecting his
      liability for product-caused injury. 76 ALR2d 91.
    Products liability: product as unreasonably dangerous or unsafe
      under doctrine of strict liability in tort. 54 ALR3d 352.
    Duty of manufacturer to equip product with safety device to protect
      against patent as obvious danger. 95 ALR3d 1066.
[2] 63 Am Jur 2d, Products Liability §§ 35, 36.
    Products liability: manufacturer's responsibility for defective com-
      ponent supplied by another and incorporated in product. 3 ALR3d
      1016.
[3] 63 Am Jur 2d, Products Liability §§ 50, 52, 53.
[3, 4] Manufacturer's or seller's duty to give warning regarding
    product as affecting his liability for product-caused unjury. 96
    ALR2d 9.
[4] 63 Am Jur 2d, Products Liability § 51.
[5] 31 Am Jur 2d, Expert and Opinion Evidence § 16.

"outrigger" on the roof of the building, from which the scaffold was suspended. The trial court correctly ruled that Spider was under no duty to supply metal outriggers with the scaffold. The outriggers, or any other suspension devices which might be employed to suspend the scaffold, are separate elements of the system of which the scaffold is also an element. The scaffold itself was not defective.

2. There is no duty to instruct a purchaser or user of a product in the proper use of the product, separate from the duty to warn of dangers created by improper use.

3. The trial court properly instructed the jury that Spider had no duty to warn against using inadequate outriggers if the danger of an inadequate support system was obvious or known to the user.

4. The trial court did not abuse its discretion in excluding certain expert testimony.

Affirmed.

1. PRODUCTS LIABILITY — DUTY — MANUFACTURERS — SAFETY DE-
VICES.

A manufacturer is under a duty to users of its product to furnish a product which is not unreasonably dangerous when used in the manner intended or in a manner reasonably foreseeable by the manufacturer; the omission or inadequacy of a safety device may render a product unreasonably dangerous.

2. PRODUCTS LIABILITY — DUTY — MANUFACTURERS — COMPONENTS
OF SYSTEMS.

A manufacturer of a component for use in a suspended work-stage system is under no duty to supply other components of such a system, and the failure of a component not supplied by the manufacturer, which results in injury to a plaintiff, creates no liability toward the plaintiff on the part of the manufacturer.

3. PRODUCTS LIABILITY — DUTY — MANUFACTURERS — USE OF PROD-
UCT.

A manufacturer is under no duty to instruct in the proper use of a product, separate and apart from the duty to warn of dangers created by improper use.

4. PRODUCTS LIABILITY — MANUFACTURERS — OBVIOUS DANGERS.

A manufacturer is under no duty to warn of dangers in the use of its product which are obvious to all.

5. WITNESSES — EVIDENCE — EXPERT TESTIMONY — JUDGE'S DISCRE-
   TION.

   A trial court has the discretion to determine whether or not
   expert testimony is required on a matter at issue.

*Church, Wyble, Kritselis, Anderson & Robinson* (by *Thomas H. Hay*), for plaintiffs.

*Joselyn, Rowe, Jamieson & Grinnan,* for defendant Spider Staging Sales Company, Inc.

Before: M. F. CAVANAGH, P.J., and R. M. MAHER and W. VAN VALKENBURG,* JJ.

R. M. MAHER, J. Plaintiffs appeal as of right from a jury verdict of no cause of action as against Spider Staging Sales Company, Inc., the sole remaining defendant at the time of trial (hereinafter Spider).

This lawsuit arose out of a construction accident occurring on July 7, 1970, at the site of the State Employees Credit Union building in Lansing. Plaintiff Howard Antcliff was injured when the scaffold upon which he was working fell to the ground, taking him with it. He is permanently and totally disabled as a result of the accident, and requires round-the-clock nursing care.

Geraldine Antcliff, wife of Howard, and Howard, by his guardian (Geraldine), brought this action against Christman Construction Company, Inc., general contractor on the project; Manson, Jackson & Kane, Inc., architects; State Employees Credit Union, owner of the building under construction; and Spider Staging Sales Company, Inc., manufacturer of the scaffolding. Christman filed a third-party complaint for indemnification against Austin's Painters Flint, Inc., Antcliff's employer at

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

the time of the accident. Prior to trial, plaintiffs settled their claim against Christman Construction and released Christman, the architect, and the credit union. The case proceeded to trial on theories of negligence and breach of express and implied warranties by Spider.[1]

Defendant Spider manufactures and sells powered staging equipment for use in construction and maintenance of buildings, bridges and similar structures. The particular unit involved in this litigation is their model ST-18, consisting of a metal platform with railings, a motorized winch mounted below the platform, and a wire rope wound on the winch and leading through the platform and through a guide mounted above the platform to some means of support overhead. On the day of the accident, Howard Antcliff (hereinafter plaintiff) and James Hathcock, a co-worker, were standing on an apparatus consisting of two ST-18 units connected by a 25-foot aluminum platform manufactured for this purpose by Spider.[2] Each unit was suspended from a 4 × 4 wooden beam (called an outrigger) extending approximately 15 inches over the edge of the roof parapet and counterweighted by means of sand bags at the other end of the beam.

The sole eyewitness to the accident was James Hathcock.[3] Hathcock testified as follows: Plaintiff and he had been working at opposite ends of the scaffold, covering windows on the south face of the

---

[1] After the close of evidence, plaintiffs withdrew their claim of breach of express warranty, and only the negligence and implied warranty counts went to the jury.

[2] Except as hereafter noted, all equipment involved was owned by Austin's Painters, plaintiff's employer.

[3] Although Howard Antcliff appeared at trial and answered a few questions by means of pointing at the desired answer, he was not sworn as a witness. Plaintiff could neither speak nor hear at the time of trial.

building in preparation for the next day's sand-blasting operation; Hathcock walked to the east end of the scaffold, where plaintiff was working, to borrow a cigarette; plaintiff was standing on the platform of the ST-18 itself; as Hathcock took a cigarette and turned away, he felt the scaffolding fall out from under him; Hathcock grabbed for plaintiff, apparently without success; he remembered seeing plaintiff crouched in the "buggy" as it fell; Hathcock remained suspended by his safety line; plaintiff's safety line apparently failed.

Post-accident investigation revealed that the outrigger on the east end of the scaffold had pulled loose from the counterweights and fallen to the ground and that the west outrigger had broken at the point where it crossed the parapet. The wreckage of the scaffold lay beneath the west outrigger, at right angles to the wall on which Antcliff had been working.[4] It was plaintiffs' theory that the west outrigger broke first, throwing the entire weight of the scaffolding on the east outrigger, causing it to pull out from its counterweights and plunging the scaffold to the ground. Spider, on the other hand, theorized that the east outrigger pulled loose first, throwing the entire weight on the west outrigger and causing it to break.

Plaintiffs alleged that Spider was negligent in failing to supply metal outriggers with their staging devices, in failing to warn users not to use wooden outriggers, in advising plaintiff's employer to use wooden supports, in failing to instruct users of its product in proper rigging techniques and in designing and selling a product which put dangerous sudden stress on the suspension system as a

___

[4] The wreckage lay parallel to a wall extending out at right angles from the south face of the building (on which the scaffold had been hung) immediately west of the west outrigger.

result of slippage of the cable on the drum of the winch, caused by uneven winding.

Plaintiffs further alleged that Spider breached the implied warranties of merchantability and fitness for purpose by falsely representing that its product could safely be suspended from wooden outriggers, that the ST-18 was a complete and safe system, that the cable would level wind and would not put undue stress on the suspension system by cable slippage, that the product could be operated without special instruction, and that Spider's repair manual and advertising brochure were adequate to instruct users in safe rigging techniques.

On the first day of trial, prior to the presentation of any evidence, Spider moved for the suppression of evidence intended to show that Spider breached its duty to instruct in proper rigging techniques, on grounds that the law imposes no such duty on Spider. Spider further moved to suppress evidence relating to an alleged duty to supply metal outriggers with its staging units. The court ruled that evidence regarding breach of the duty to warn against use of inadequate materials for outriggers would be received, but made no express ruling on duty to instruct in rigging techniques. Regarding the duty to supply metal outriggers, the court ruled that the law imposed no such duty upon a manufacturer. The issue of duty to instruct purchasers in proper rigging techniques reappeared later in the trial, at which time the trial court ruled that Spider had no such duty to purchasers of its equipment.

Plaintiffs claim on appeal that the trial court erred in ruling that Spider had no duty to supply metal outriggers and no duty to instruct in proper rigging techniques. Plaintiffs also assign as error certain rulings on admissibility of evidence, cer-

tain of the instructions to the jury, and the court's refusal to give certain instructions requested by the plaintiffs.

Plaintiffs' first claim is that the trial court erred in ruling that Spider was under no duty to supply metal outriggers along with its ST-18 model and in refusing to admit evidence and to instruct the jury regarding such a duty. Plaintiffs argue that the outriggers are a safety device which must be included as part of a total package in order to render the ST-18 reasonably safe for its intended or foreseeable uses. In support of their argument, plaintiffs cite several cases involving, for the most part, industrial machines which lacked adequate shields or other safety devices. See, for example, *Casey v Gifford Wood Co,* 61 Mich App 208; 232 NW2d 360 (1975) (failure to provide shield for ice crushing machine), *Byrnes v Economic Machinery Co,* 41 Mich App 192; 200 NW2d 104 (1972) (providing shield which had to be removed for maintenance of machine), and *McKinch v Dixon,* 391 Mich 282; 215 NW2d 689 (1974) (failure to provide screen to prevent dirt from entering brake cylinder).

There is no question that a manufacturer is under a duty to users of its product to furnish a product which is not unreasonably dangerous when used in the manner intended or in a manner reasonably foreseeable by the manufacturer. *Elsasser v American Motors Corp,* 81 Mich App 379; 265 NW2d 339 (1978). A product may be rendered unreasonably dangerous by the omission or inadequacy of a safety device. *Coger v Mackinaw Products Co,* 48 Mich App 113; 210 NW2d 124 (1973).

The difficulty with plaintiffs' argument is that the outriggers are not a device which may be

integrated into the ST-18 itself to make it safer, but a separate element in a system of which the ST-18 is also a component. Plaintiffs argue that because the ST-18 must be suspended by some means in order to be used, the outriggers should be considered an integral part of the ST-18 just as, for example, a safety shield is considered part of an ice crusher, see *Casey v Gifford Wood Co, supra.* However, although the ST-18 must unquestionably be suspended by some means, it need not necessarily be suspended by outriggers. Testimony at trial revealed that staging like the ST-18 may be suspended by several methods, only one of which requires use of outriggers.[5] There are many situations in which use of outriggers would be inadvisable, dangerous or simply impossible *(e.g.* suspending staging from a bridge). To hold, as plaintiffs urge, that outriggers are an integral part of Spider's product is to ignore the evidence adduced at trial.

The outriggers, parapet hooks, tank rollers and other suspension devices may be viewed either as separate components of a system or as accessories to be used with the ST-18. In either case, Spider is under no duty to supply one or all of the suspension devices simply because it undertook to furnish an ST-18 to plaintiff's employer. It must be emphasized that the jury found that the ST-18 itself was not defective, either in manufacture or in design. Spider therefore fulfilled the only duty which the law imposes upon it: the duty to furnish a safe ST-18. It was not a failure of the ST-18 which caused plaintiffs' harm, but rather a failure of a separate

---

[5] According to a catalogue offered into evidence by plaintiffs, Spider itself offers no fewer than nine different devices which may be used to suspend the ST-18, depending upon the situation in which the staging is used. Special devices exist, for example, which attach to the support beams of a building to permit the ST-18 to be used in factories, etc.

device, not furnished by Spider, which is at most an accessory to the ST-18.

It should be made clear that this is not a case in which a defendant voluntarily undertakes to do a task and does it negligently, or in which a special relationship between a defendant and a plaintiff imposes a duty of care over and above the usual duty. Cf. *Farwell v Keaton,* 396 Mich 281; 240 NW2d 217 (1976), *Funk v General Motors Corp,* 392 Mich 91; 220 NW2d 641 (1974), *Wilhelm v The Detroit Edison Co,* 56 Mich App 116; 224 NW2d 289 (1974). Spider assumed no responsibility for designing and fabricating a suspension system suitable for the needs of plaintiff's employer, but simply furnished a component for use in such a system. Cf. *Robertson v Swindell-Dressler Co,* 82 Mich App 382; 267 NW2d 131 (1978).

The limits of the component manufacturer's duty was briefly discussed in *Jordan v Whiting Corp (On Reh),* 49 Mich App 481; 212 NW2d 324 (1973), *rev'd in part on other grounds* 396 Mich 145; 240 NW2d 468 (1976), in which the plaintiff therein alleged that his injury resulted from improper installation of an electrical device apparently manufactured by Whiting, from improper design of the crane of which the device was a component, and from failure to install a cover over certain electrical bars. This Court upheld a directed verdict for the defendant therein, saying:

"This defendant manufactured components which were ordered and bought from it by Dearborn. As to foreseeability and tort liability, Whiting could not have known—at least so far as the record shows—how these components were to be fashioned or fabricated into the completed unit. The obligation that generates the duty to avoid injury to another which is reasonably foreseeable does not—at least yet—extend to the anticipation of

how manufactured components not in and of themselves dangerous or defective can become potentially dangerous dependent upon the nature of their integration into a unit designed, assembled, installed, and sold by another." 49 Mich App at 486.

With regard to the lack of a cover over the bars, the Court said:

"We can hardly be expected to hold, since the exposed bars did not violate any electrical code legislatively imposed (a fact conceded by plaintiff), that Whiting had the obligation, and more importantly the *right* to insist that the purchaser buy the covers." 49 Mich App at 488.

Just as the manufacturer in *Jordan, supra,* had no obligation to insist that the purchaser buy a cover for electrical bars, Spider had no obligation to require that plaintiff's employer purchase metal outriggers.[6] This is especially true where, as is the case here, metal outriggers are but one of many suspension devices which may be utilized in conjunction with Spider's product.

Michigan is not alone in its reluctance to impose a duty to furnish accessories on a manufacturer. In *Leonard v Albany Machine & Supply Co,* 339 So 2d 458 (La App, 1976), the Louisiana court rejected the argument that the manufacturer of a lumber trimmer intended to be incorporated into a complete sawmill operation had a duty to provide a shield to protect the operator, noting that industry

---

[6] Although plaintiffs sought to establish at trial that construction safety codes prohibited the use of wooden outriggers, such codes apply to contractors, not necessarily to equipment manufacturers. *Cf. Blanchard v Monical Machinery Co,* 84 Mich App 279; 269 NW2d 564 (1978). Moreover, even if use of wooden outriggers is improper, their use in conjunction with an otherwise defect-free ST-18 would not create a defect in the ST-18. The defect, if any, would be in the outriggers.

custom put that duty on the sawmill designer and that it was difficult to tell what shields would be needed before the machine was incorporated into the total design of the mill.

Similarly, in the case before us, Spider furnished its ST-18 staging device with knowledge that it would be used in conjunction with other equipment, including some device for suspending the ST-18 from some overhead support. Spider did not, however, know the precise means which would be used to suspend the ST-18 in future jobs undertaken by plaintiff's employer, a painting contractor which offered a variety of services on construction sites. There was also ample evidence to establish that workers in the trade customarily did their own rigging at least in part to assure themselves that the scaffolding was safely rigged. In view of the wide variety of rigging devices and techniques available, the varying conditions presented by different contracting jobs, and the relative expertise of the consumers of this product, it seems reasonable to leave the task of selecting suspension devices to purchasers rather than to impose a duty to furnish such devices on the manufacturer. The burden which would result from imposition of a duty to furnish accessories was described by the Illinois Appellate Court as follows:

"Needless to say, this would require the manufacturer to confer with every prospective buyer and make a judgment, at his peril, of what the buyer needed. Alternatively, the manufacturer would be under a duty to recommend to or provide the buyer *all* of the accessories available regardless of how limited was the intended use. No case has been cited, nor do we think one exists, extending the doctrine of strict liability to this extreme." *Weiss v Rockwell Manufacturing Co,* 9 Ill App 3d 906, 912; 293 NE2d 375, 379 (1973).

We agree with the Illinois court that imposing such a duty would be an unwarranted expansion of the law of products liability.

Plaintiffs' second claim is that the trial court erred in refusing to admit evidence and to instruct the jury to the effect that Spider had an obligation to instruct purchasers and users of its products in proper rigging techniques. Plaintiffs argue that Michigan law imposes a duty to instruct in proper use of a product, separate and apart from the duty to warn of dangers created by improper use. We disagree. The cases cited by plaintiffs in support of their contention all involve either failure to warn of special precautions which must be taken to guard against hidden dangers, see *Hill v Husky Briquetting, Inc,* 54 Mich App 17; 220 NW2d 137 (1974), or inadequacy of the warning given, see *Gutowski v M & R Plastics & Coating, Inc,* 60 Mich App 499; 231 NW2d 456 (1975). See also *Smith v E R Squibb & Sons, Inc,* 405 Mich 79; 273 NW2d 476 (1979). The trial court properly instructed the jury on Spider's duty to warn of dangers inherent in the use of the ST-18; specifically, the danger of using wooden outriggers to suspend the ST-18. The court's instructions in this regard accurately stated the limits of Spider's duty toward users of its products.[7]

Plaintiffs contend that the trial court erred in

---

[7] The trial court instructed the jury, with regard to duty to warn, as follows:

"I instruct you that if you find that the defendant, Spider, knew or should have known that the ST-18 powered suspension staging did not, in fact, level wind the wire rope in all instances which could result in an uneven wire rope buildup, which in turn could cause its product to have a sudden dropping and jerking propensity then you may find the defendant was negligent in failing to advise and warn the users of this propensity.

"I further instruct you that if you find that the defendant, Spider, knew or should have known that the effects of the dropping and jerking could result in a failure of the system to meet the four-to-one

instructing the jury that Spider had no duty to warn against using inadequate outriggers to suspend the ST-18 if the danger of an inadequate support system was obvious or known to the user, citing *Casey v Gifford Wood Co, supra,* and *Shears v Pardonnet,* 80 Mich App 358; 263 NW2d 373 (1977). Those cases, however, did not involve the duty to warn against dangers inherent in the use of the product, but rather involved the manufacturer's alleged failure to equip its product with

safety factor because of additional stress placed on overhead units then you may find the defendant was negligent in failing to warn against using inadequate or improper overhead units.

"If you find from the evidence that the defendant, Spider, knew or should have known based upon the state of the art that construction materials should never be used as part of the overhead support system, you may find the defendant negligent in failing to warn its users not to use construction-type materials in suspending its product.

"If you find that the defendant knew or should have known based upon the state of the art that tie-backs should have been used as a fail-safe system which could have supported the staging in the air in the event an outrigger failed, you may find defendant was negligent in failing to warn users that tie-backs should be used as part of their overhead support system.

"I have instructed you regarding the duty of the defendant, Spider, to warn of the danger of not using adequate rigging to suspend the ST-18s and platform. In this regard, I instruct you further that the defendant, Spider, does not have a duty to warn against use of its scaffolding with inadequate outriggers and/or using its scaffolding without tie-backs if you find from the evidence that the danger of not suspending the ST-18s and platform with an adequate supporting system or rigging was obvious or known to the user.

"If you find from the evidence that the defendant knew or should have known that its product was being used with wooden outriggers, and that it knew or should have known that its product and the entire scaffolding system was likely to be tested by persons jumping upon the platform, and knew or should have known that such testing could weaken wooden outriggers, then you may find that the defendant was negligent in failing to warn against such type of testing when its product was used in conjunction with wooden outriggers.

"Although, if you find plaintiff was aware of the danger, awareness alone would not preclude you from finding the defendant liable for negligence. A danger may be obvious but not appreciated. Even where a danger is appreciated, circumstances may cause it to be forgotten. Where a person must work in a place of possible danger, the care which he is bound to exercise for his own safety may well be less than is normally required due to the necessity of giving attention to his work."

safety devices or shields. The rule on duty to warn has long been and continues to be that there is no duty to warn of dangers which are obvious to all. *Hensley v The Muskin Corp,* 65 Mich App 662; 238 NW2d 362 (1975), *Gronlie v Positive Safety Manufacturing Co,* 50 Mich App 109; 212 NW2d 756 (1973). The trial court's instructions were proper in this regard.

Plaintiffs also assign as error the trial court's exclusion of expert opinion testimony on certain matters, including foreseeability of the accident and adequacy of Spider's brochures as warnings. Whether expert testimony is required on a subject is a matter within the discretion of the trial court. *Dowell v General Telephone Co of Michigan,* 85 Mich App 84; 270 NW2d 711 (1978), *Friedman v Farmington Twp School District,* 40 Mich App 197; 198 NW2d 785 (1972). We see no abuse of discretion here.

The plaintiffs claim that reversal is mandated by the recent Supreme Court decision in *Tulkku v Mackworth Rees Div of Avis Industries, Inc,* 406 Mich 615; 281 NW2d 291 (1979), which held that contributory negligence is not a defense in a products liability case where it is alleged that the manufacturer was negligent in failing to provide an adequate safety device. However, *Tulkku* is not applicable to the instant case, since we have found previously that the outriggers were not safety devices.[8]

Plaintiffs assign as error certain other portions of the trial court's instructions. We are of the opinion that, considered in their entirety, the

[8] Furthermore, the record does not support plaintiffs' claim that the level wind system was in fact a "safety device" or was so presented at the trial. The fact that the mechanism which controlled the rope may have incorporated some safety features does not bring it within the rule of *Tulkku, supra.*

court's instructions fully and properly apprised the jury of the applicable law. *Berlin v Snyder,* 89 Mich App 38; 279 NW2d 322 (1979).

The judgment of the trial court is affirmed. Costs to defendant Spider.