### BRUNO v DETROIT INSTITUTE OF TECHNOLOGY

1. CONTRACTS—CONSTRUCTION OF CONTRACTS—COLLEGES AND UNIVERSITIES—TENURE.

   The phrase "shall be considered to hold tenure", which was a part of a university's statement of tenure policy, means that all persons who had fulfilled the enumerated qualifications were deemed to be tenured professors without any further action on the part of the university.

2. CONTRACTS—CONSTRUCTION OF CONTRACTS—AMBIGUITY—COLLEGES AND UNIVERSITIES—TENURE.

   A university's action in continuing a faculty member's employment and in remaining silent as to any inadequacy was a sufficient overt expression that the faculty member's performance was deemed acceptable, "acceptable performance" in the opinion of the university's president and academic deans being a prerequisite to hold tenure, where the language of the tenure policy was ambiguous as to how the opinion with respect to the acceptability of a faculty member's performance was to be expressed.

3. CONTRACTS—BREACH OF CONTRACT—DAMAGES—FUTURE DAMAGES—COLLEGES AND UNIVERSITIES—TENURE

   A faculty member who had attained tenure status in accordance with a university's tenure policy and who was entitled to continuous employment by the university until retirement under the university's definition of tenure was entitled to future damages where the university breached the employment contract.

4. DAMAGES—FUTURE DAMAGES—PRESENT WORTH.

   Future damages must be reduced to their present worth.

---

REFERENCES FOR POINTS IN HEADNOTES

[1–3, 5] 15 Am Jur 2d, Colleges and Universities §§ 11, 12, 14.

[3–5] 22 Am Jur 2d, Damages § 26.

Duty to instruct, and effect of failure to instruct, jury as to reduction to present worth of damages for future loss on account of death or personal injuries, 154 ALR 796.

[6] 22 Am Jur 2d, Damages §§ 24, 25.

5. DAMAGES—FUTURE DAMAGES—COMPUTATION—COLLEGES AND UNI-
   VERSITIES.

> The proper method of computing future damages where a university breached its employment contract with a tenured faculty member is (1) on the basis of past experience, project and anticipated level of compensation for similarly situated faculty members at the defendant institution for each of the years until the date at which plaintiff would have retired had he been allowed to continue his employment; (2) on the basis of past experience, project the anticipated earnings of plaintiff premised upon good faith attempts on plaintiff's part to secure employment in his chosen profession; (3) subtract the anticipated earnings of plaintiff for each of the years from the anticipated salary he would have received at the defendant institution in the corresponding year; (4) reduce the difference for each year to its worth as of the date of the filing of the complaint; and (5) take the sum of these properly mitigated and reduced figures.

6. DAMAGES—UNCERTAINTY OF DAMAGES—UNCERTAINTY OF AMOUNT.

> It is the uncertainty as to the fact of legal damages that is fatal to recovery, but not uncertainty as to the amount.

Appeal from Wayne, Edward S. Piggins, J. Submitted Division 1 November 13, 1973, at Detroit. (Docket No. 14812.) Decided March 4, 1974.

Complaint by Vincent J. Bruno against the Detroit Institute of Technology for breach of employment contract. Judgment for defendant. Plaintiff appealed. The Court of Appeals reversed and remanded to the trial court for determination of any damages in excess of one year's salary. 36 Mich App 61. Judgment for defendant. Plaintiff appeals. Reversed and remanded with instructions.

*Zwerdling, Maurer, Diggs & Papp,* for plaintiff.

*Cross, Wrock, Miller & Vieson* (by *W. Robert Chandler* and *Thomas D. Carney),* for defendant.

Before: V. J. BRENNAN, P. J., and T. M. BURNS and VAN VALKENBURG,* JJ.

VAN VALKENBURG, J. The background facts of this dispute can be found in this Court's opinion in the prior appeal involving this litigation. See, 36 Mich App 61; 193 NW2d 322 (1971), *lv den,* 386 Mich 782 (1972). In that prior decision this Court held that plaintiff did have a contract to teach with defendant for the academic year 1966-1967 and that defendant had breached that contract and was liable "for at least the one year's salary of $7,500". This Court, however, refrained from deciding the question of whether plaintiff was entitled to damages for subsequent years by reason of defendant's tenure policy. The matter was remanded to the trial court for the determination of any damages in excess of one year's salary.

Upon remand the trial court held two hearings. At the first hearing the trial court held that plaintiff had obtained tenure; however, upon a rehearing, the trial court reversed itself and held plaintiff had not obtained tenure. Plaintiff thereafter appealed as of right.

The principle question involved in this appeal is whether or not the plaintiff had acquired tenure in his teaching position while employed by defendant. The answer to the question depends entirely upon the construction given to the language of paragraph III(1) of defendant's tenure policy as it existed in 1963, which provided:

"Any faculty member on full-time * * * contract * * * staff appointment * * * who, in the opinion of the President and the Academic Deans has acceptably performed his duties for a period of at least three consecu-

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

tive years at the Institute, has been assigned the rank of Associate or Full Professor, and has been tendered his fourth or succeeding annual contract and has accepted same, shall be considered to hold tenure."

Defendant first argues that tenure is not automatically bestowed upon those persons who have fulfilled the conditions set forth in paragraph III(1). Defendant would have this Court construe the phrase "shall be considered to hold tenure" to mean that the question of an otherwise qualified person's tenure would be taken under consideration but that the person would not become a tenured professor until some affirmative action is taken on the part of defendant with respect to granting tenure. While granting that the verb "shall be considered" could, in some contexts, be construed to mean that the matter "shall be given thought and reflection", such a construction here seems strained. Used in this context, the phrase is more properly construed to mean shall be "deemed" or "adjudged". See 8A, Words and Phrases, p 230. At best the meaning of the phrase is ambiguous, and therefore would be construed against the party who drafted it. *Elby v Livernois Engineering Co*, 37 Mich App 252; 194 NW2d 429 (1971). Accordingly, we construe the phrase "shall be considered to hold tenure" to mean that all persons who have fulfilled the enumerated qualifications were deemed to be tenured professors without any further action on the part of defendant.

We would further note that even if defendant's construction were adopted, it would not change the result. Plaintiff's contract for the 1965–1966 and 1966–1967 academic years incorporated a memorandum which provided that "[q]ualified faculty will be granted tenure only as specified in the tenure policy adopted by the Board of Trustees of

D.I.T. April 17, 1963". Clearly even if the phrase "shall be considered to hold tenure" were construed to require some further action on the part of defendant, that further action had been taken by defendant.

The question thus becomes whether plaintiff was a qualified person within the meaning of paragraph III(1). Defendant argues that plaintiff had not fulfilled the qualifications set forth in paragraph III(1) in that there must be an affirmative determination on the part of the president and academic deans that plaintiff had "acceptably performed his duties", a determination not made with respect to plaintiff, and that plaintiff must have been assigned the rank of associate or full professor for three consecutive years and be offered a fourth contract at that rank.

One of the qualifications to obtain tenure is that the person "in the opinion of the President and the Academic Deans has acceptably performed his duties for a period of at least three consecutive years at the Institute". Defendant urges this Court to construe that language to mean that there must be some affirmative determination by the president and deans that plaintiff has indeed performed in an acceptable manner and that such a determination must be conveyed to plaintiff before he would be eligible to attain tenured status.

Clearly the language does not require that the president and deans formally pass upon whether plaintiff has acceptably performed his duties and certainly the language cannot be read so broadly as to require that a formal notice of such a determination be conveyed to plaintiff before he would gain tenure. The language used requires only that the president and deans be of the opinion that plaintiff has acceptably performed his duties for

the requisite period. The word "acceptable" is defined as "barely satisfactory or adequate". Webster's Third New International Dictionary (1970 ed), p 11. "Acceptably performed his duties" would therefore mean that the duties were performed in a fashion that was at least satisfactory or adequate. It follows then that if the duties were not "acceptably performed" the quality of the person's performance would not reach the level considered to be barely satisfactory or adequate. Because the lack of any criticism by defendant with respect to plaintiff's work at any time prior to August 1966, coupled with defendant's yearly renewal of plaintiff's contract and appointment in 1964 as an associate professor, is inconsistent with any present assertion plaintiff had not "acceptably performed his duties", defendant will not now be heard to deny that it was of the opinion that plaintiff's duties had been acceptably discharged. The language being ambiguous as to how the opinion with respect to the acceptability of plaintiff's performance is to be expressed, we hold that defendant's action in continuing plaintiff's employment and in remaining silent as to any inadequacy is a sufficient overt expression that plaintiff's performance was deemed acceptable.

As to the assertion that to qualify for tenure plaintiff must have held the rank of associate or full professor for three consecutive years, we will only say that any reasonable reading of the language of paragraph III(1) will not support such a conclusion. Paragraph III(1) requires only that the person (1) have acceptably performed his duties for three consecutive years, (2) have obtained an associate or full professorship, and (3) have been presented with and accepted a fourth or succeeding

annual contract. As of the date of the entry into the contract for 1965–1966 plaintiff had fulfilled each of these qualifications; therefore, plaintiff had tenure with defendant as of that date. Accordingly, the decision of the trial court is reversed.

Clearly, the matter must be remanded for the determination of damages. However, in view of the fact that both the parties and the trial court were uncertain as to the proper measure of damages, we feel that it is incumbent to set forth some guidelines in the hope that a third appeal of this matter will not result. With respect to plaintiff's claim that he should not be limited to $7,500 as damages for the academic year 1966–1967, since the average salary paid to an associate professor employed by defendant during that year was $9,100, we can only say that plaintiff, as well as defendant, was bound by the contract of April 28, 1965. It was decided in the prior appeal "that the contract provided for at least a $7,500 salary for both years with the possibility of plaintiff receiving a raise in the second year". It is clear that when defendant "reviewed" plaintiff's salary for the academic year 1966–1967 it determined not to give plaintiff a raise. Thus, the contractual damages were the aforementioned $7,500 for the year 1966–1967.

Damages for the years from the 1966–1967 academic year to the present should be easily ascertained upon proof by plaintiff of the average salary of similarly situated associate professors employed by defendant. This figure should of course be reduced by such sums as the plaintiff has earned or could have earned if he had made reasonable efforts to secure employment in his chosen profession. Further, to the extent that such damages occurred after the date of the filing of the complaint, the damages should be reduced to their

worth at the time of the filing of the complaint.[1]

It would further appear that plaintiff is entitled to future damages. As stated in defendant's 1963 tenure policy:

"Tenure is defined as expectation of continuous appointment until retirement, with stipulations that it may be terminated for causes specifically identified in the present statement of tenure policy."

Clearly, having attained tenured status, plaintiff is entitled to continuous employment by defendant until retirement. The proper measure of damages, as stated in *Dierickx v Vulcan Industries,* 10 Mich App 67, 71–72; 158 NW2d 778, 781 (1968), is

"to 'put the injured party in as good a position as he would have had if performance had been rendered as promised.' 5 Corbin on Contracts, § 992, p 5."

The proper method of computing these future damages is: (1) On the basis of past experience, project the anticipated level of compensation for similarly situated associate professors at defendant institution for each of the years until the date at which plaintiff would have retired had he been allowed to continue his employment relationship

---

[1] At the time of the filing of the complaint the damages with respect to later years are future damages. Future damages, of course, must be reduced to their present worth. *Coger v Mackinaw Products Co,* 48 Mich App 113, 127; 210 NW2d 124, 131 (1973). Since the interest on the judgment statute, MCLA 600.6013; MSA 27A.6013, provides that the statutorily mandated interest on the judgment shall run from the filing of the complaint, if the damages for the years subsequent to the filing of the complaint were not reduced to their worth at that date, plaintiff, by the operation of the statute, would be given interest on monies from a time prior to the time they were owed to him. By reducing the worth of the damages to the date of the complaint and then adding the statutorily mandated interest from that date, plaintiff is made whole, and any duplicity of compensation by defendant is avoided.

at defendant institution; (2) On the basis of past experience, project the anticipated earnings of plaintiff premised upon good-faith attempts on plaintiff's part to secure employment in his chosen profession; (3) Subtract the anticipated earnings of plaintiff for each of the years from the anticipated salary he would have received at defendant institution in the corresponding year; (4) Reduce the difference for each year to its worth as of the date of the filing of the complaint;[2] and (5) Take the sum of these properly mitigated and reduced figures.

There can be no question that there will be a great many problems in attempting to ascertain what the anticipated salaries and earnings will be; however, as stated in *Barry v Flint Fire Department,* 44 Mich App 602, 612; 205 NW2d 627, 632 (1973):

"It is the uncertainty as to the fact of legal damages that is fatal to recovery, but not uncertainty as to the amount."

We feel we would be remiss if we did not hasten to add that the entire problem of future damages could be avoided if defendant were now willing to abide by its contractual obligation and again allow plaintiff to return to his teaching post. In that case there would no longer be the continuing breach on defendant's part which gives rise to the aforementioned future damages.

Reversed and remanded for determination of damages consistent with this opinion. Costs to the plaintiff.

All concurred.

---

[2] These future damages should be reduced to their worth on the date of filing the complaint for the reason set forth in footnote 1.