**Wallace C. CLISSOLD and Ingebord Clissold, Plaintiffs-Appellees,**

v.

**ST. LOUIS–SAN FRANCISCO RAILWAY COMPANY, Defendant-Appellant.**

No. 77–1132.

United States Court of Appeals, Sixth Circuit.

Argued June 19, 1978.
Decided June 7, 1979.
Rehearing Denied July 6, 1979.

Gordon B. Wheeler, Wheeler, Upham, Bryant & Uhl, Grand Rapids, Mich., Carson C. Grunewald, Bodman, Longley, Bogle & Dahling, George G. Kemsley, Detroit, Mich., for defendant-appellant.

William D. Buchanan, Chollete, Perkins & Buchanan, Grand Rapids, Mich., Francis H. Monek, Chicago, Ill., for plaintiffs-appellees.

Before WEICK and MERRITT, Circuit Judges, and CECIL, Senior Circuit Judge.

WEICK, Circuit Judge.

The defendant has appealed from a judgment in favor of the plaintiffs in this personal injury diversity action governed by Michigan law.

The complaint was filed in the District Court on November 20, 1972. However, the case was not reached for trial until October 6, 1976. The reason for this long delay does not appear to be attributable to any activities of the parties, as the docket entries show only the filing of the complaint and the answer.

The case was tried for three days by the District Court without a jury. At the end of the second day the Court announced from the bench its opinion on the issue of liability, deciding in favor of the plaintiffs. At the end of the third day the District Court announced from the bench its opinion on damages and awarded to Wallace C. Clissold $500,482.83, and to his wife, Ingebord Clissold, $30,100. The District Judge indicated that he would write an opinion later, which was filed and judgment entered on October 22, 1976.

The record on appeal was not filed in this Court until February 17, 1977. We mention these dates only because the plaintiff was deprived of money to which he was justly entitled, and the defendant, who was not responsible for the delay, is being charged with interest from the date of the filing of the complaint on November 20, 1972. We have considered these facts in reaching our decision that it is not necessary to remand for further findings.

In this appeal the defendant does not dispute the District Court's finding of liability, but instead, it claims that there are errors in six of the nine specific items of damages awarded below. In our opinion as hereinafter pointed out, the awards in certain respects were grossly excessive, were speculative, and were clearly erroneous. Accordingly, we will modify the judgment of the District Court, and as modified, we affirm. *See* 28 U.S.C. § 2106.

Wallace Clissold was a long-time employee of the Kellogg Company when on August 31, 1971 a 1500-pound steel bulkhead door in a railway boxcar owned by the defendant, fell on him. He suffered a broken nose, a broken ankle, and a broken foot. Clissold remained hospitalized for one month, and was totally disabled for another five months. He returned to work in March, 1972, and was eventually returned to the foreman's job which he held prior to the accident. He was unable, however, to perform all of the duties that he had previously been able to accomplish, and he was provided with a three-wheel cart which improved his mobility on the job.

Two years after the accident surgery was again required on Clissold's feet. One and one-half years later he was hospitalized for treatment of an ulcer which, it was contended, resulted from the injury. Medical evidence showed that Clissold is permanently partially disabled. It is also possible that he may develop arthritis in his right foot,

and he is not expected to regain full mobility. Based on this evidence the District Court concluded that Clissold would not be able to continue his foreman's job, and that the most he could expect was a staff job at reduced pay and overtime.

The District Court made the following specific awards:

*Wallace C. Clissold—*

| | | |
|---|---|---:|
| 1. | Pain and suffering first six (6) months | $ 25,000.00 |
| 2. | Pain and suffering 4½ years to date at $5,000 per year | 22,500.00 |
| 3. | Future pain and suffering—Life expectancy 29.54 years at $5,000 per year $147,700.00 | |
| | Present Worth | 68,390.00 |
| 4. | Wage loss to date | 11,556.00 |
| 5. | Overtime loss to date | 13,142.00 |
| 6. | Present worth of future overtime loss | 212,341.00 |
| 7. | Present worth of loss of future wage earning capacity | 143,684.83 |
| 8. | Medical and Hospital | 3,869.00 |
| | | $500,482.83 |
| 9. | *Ingebord Clissold*—Loss of Consortium | $ 30,100.00 |

In this appeal the defendant does not contest items 1, 4, and 8:

| | |
|---|---:|
| (1) Pain and suffering for first six months | $25,000. |
| (4) Wage loss prior to trial | 11,556. |
| (8) Medical and hospital costs | 3,869. |

## Pain and Suffering

■ The defendant challenges as excessive the awards for pain and suffering for the period from six months following the accident until trial ($22,500), and for future pain and suffering ($68,390). Under Michigan law damages are excessive and unlawful when they shock the judicial conscience. *Yates v. Wenk*, 363 Mich. 311, 319, 109 N.W.2d 828, 831 (1961).

■ For pain and suffering for the period of four and one-half years prior to trial, the District Court awarded $5,000 per year. During this time Wallace Clissold was hospitalized for additional surgery on his feet and for a bleeding ulcer; evidence further showed that he suffered considerable pain

and swelling of the ankles, and reduced mobility. In view of these facts we do not find this award shocking. In addition, the Michigan courts have approved the use of the per diem formula, a variation of which was used by the District Court here. *See Yates, supra; Pippen v. Denison Div. Abex Corp.*, 66 Mich.App. 664, 239 N.W.2d 704 (1976).

■ As to future pain and suffering, we find the award grossly excessive. The District Court based its award on the same rate of $5,000 per annum as was used to arrive at the award for pretrial pain and suffering. This award was based on the fact that Clissold will likely continue to suffer pain and loss of mobility for the rest of his life. It was not shown, however, that he will necessarily suffer the same level of pain, or that he will require additional hospitalization and surgery in the future as he has in the past. At most there is a possibility that Clissold will develop traumatic arthritis at some future time as a result of the accident. It has not yet happened and it is by no means a reasonable medical certainty. On these facts the Court acted erroneously in awarding the same annual amount for pain and suffering in the future as allowed for pain and suffering during the difficult period of the first few years following the accident.[1]

■ The District Court made one additional error with respect to its award for pain and suffering. Under Michigan law all future damages must be reduced to their value as of the date of the complaint. *Bruno v. Detroit Inst. of Technology*, 51 Mich. App. 593, 599–600 & n. 1, 215 N.W.2d 745, 749 & n. 1 (1974); *see Currie v. Fiting*, 375 Mich. 440, 453–54, 134 N.W.2d 611, 616 (1965) (plurality opinion). Although the *Bruno* decision involved the breach of an employment contract, and not tort liability, the Court expressed the rule broadly. Additionally, we believe that this is the correct approach in the present case because the

---

1. Plaintiffs' reliance on *Pippen, supra,* is misplaced. In *Pippen,* unlike this case, the plaintiff suffered the total loss of a limb.

Michigan interest-on-judgment statute, M.C.L.A. § 600.6013, M.S.A. § 27A.6013[2], mandates that interest run from the date of the filing of the complaint.[3] The application of the *Bruno* rule thus prevents unwarranted double recoveries.

Applying these rules, and noting the other error of the District Court, we believe that the maximum permissible award for pain and suffering under the facts of this case (including the award for the first six months) is $70,445. This accounts for the necessary discounting to the date of the filing of the complaint, as well as interest, up to the time of the entry of judgment by this Court.

### Lost Wages

The defendant does not contest the award for the past wages, but complains only about the award for the loss of future earning capacity. In arriving at its award of $143,684.83 (valued as of the date of judgment), the District Court compared Clissold's future earning capacity as a foreman, his old job, with that of a staff employee, the job to which the Court assumed Clissold would be transferred but actually had not been so transferred. The Court assumed that Clissold's history of receiving 7.44% annual wage increases which he had received since the accident, would continue in the future, and that as a staff employee Clissold would be paid 25% less than he would be paid as a foreman.

Under Michigan law damages for future consequences of an injury are recoverable only where there is "such a degree of probability of such consequences as to amount to [a] reasonable certainty that they will result . . . ." *Kellom v. City of Ecorse,* 329 Mich. 303, 308, 45 N.W.2d 293, 295 (1951), (quoting *Brininstool v. Michigan United Rys.,* 157 Mich. 172, 180, 121 N.W. 728, 731 (1909); *accord, Gilson v. Bronkhorst,* 353 Mich. 148, 154 n. *, 90 N.W.2d 701, 705 n. 2 (1958). We believe that the District Court's award of lost future wages was in certain aspects based on undue speculation so that the loss was not in all respects "a reasonable certainty."

The primary basis for the District Court's award was its conclusion that Clissold would be unable to continue his foreman's job. Yet at the time of trial Clissold was in fact serving in the same foreman's position that he held prior to the accident. It is true that Kellogg had made certain accommodations in the job requirements to enable Clissold to continue. It is also true that Kellogg had been seeking another, more suitable, position for Clissold. It was by no means reasonably certain, however, that Clissold would be demoted to a staff position solely because of his disability. Indeed, several other foremen had lost their jobs and had been transferred to staff positions at lower salaries because Kellogg shut down one of its operations, and not because of any employees' physical disabilities. While it was likely, and indeed probable, that Clis-

---

2. The statute provides:

   **Interest on money judgment.** Sec. 6013. Interest shall be allowed on any money judgment recovered in a civil action, such interest to be calculated from the date of filing the complaint at the rate of [6%] per year unless the judgment is rendered on a written instrument having a higher rate of interest in which case interest shall be computed at the rate specified in the instrument if such rate was legal at the time the instrument was executed. In no case shall the rate exceed 7% per year after the date judgment is entered. In the discretion of the judge, if a bona fide written offer of settlement in a civil action based on tort is made by the party against whom the judgment is subsequently rendered and the offer of settlement is substantially identical or substantially more fa-

   vorable to the prevailing party than the judgment, then no interest shall be allowed beyond the date the written offer of settlement is made.

3. We have previously held that federal courts sitting in Michigan diversity cases are required to apply this particular interest-on-judgment statute. *Lynch v. Electro Refractories & Abrasives Corp.,* 408 F.2d 363 (6th Cir. 1969) (per curiam). This holding stemmed from our earlier decision in *Glens Falls Ins. Co. v. Danville Motors, Inc.,* 333 F.2d 187, 191 (6th Cir. 1964), that although 28 U.S.C. § 1961 requires post-judgment interest, the matter of prejudgment interest is governed, in diversity cases, by state law. *See Klaxon Co. v. Stentor Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

sold would suffer some loss of future earnings, it was not a reasonable certainty that Clissold would be demoted immediately to a staff position, as the District Court assumed. For similar reasons the Court's assumption that Clissold would suffer an immediate, permanent 25% reduction in wages was in error. As of the trial date four years after the accident Clissold was again performing his duties as foreman and had not yet been demoted or transferred.

We have no quarrel with the District Court's inclusion of an annual wage increase factor, including cost of living adjustments, because we believe that Michigan courts would permit such inclusions. *See Routsaw v. McClain,* 365 Mich. 167, 112 N.W.2d 123 (1961). The factor used was based on Clissold's past experience and is supported in the record.

The Court erred, however, both in its method of reducing the loss to present value, and in failing to reduce it to the value as of the date of the filing of the complaint. The proper method was stated in *Bruno, supra,* 51 Mich.App. at 600–01, 215 N.W.2d 745, 749, as follows:

(1) On the basis of past experience, project the anticipated level of compensation [for persons situated similarly to the plaintiff] . . .;

(2) On the basis of past experience, project the anticipated earnings of plaintiff premised on good-faith attempts on plaintiff's part to secure employment in his chosen profession;

(3) Subtract the anticipated earnings of plaintiff for each of the years from the anticipated salary he would have received . . . in the corresponding year;

(4) Reduce the difference for each year to its worth as of the date of the filing of the complaint; and

(5) Take the sum of these properly mitigated and reduced figures.

Taking into account the errors we have noted and again accounting for interest from the time of the filing of the complaint until the filing of this opinion, we believe that the maximum permissible award for all lost wages, including wages lost prior to trial, is $83,398.41.

## Lost Overtime

The District Court made substantial awards for lost overtime: $13,142 for overtime lost prior to trial, and $212,341 for lost future overtime. The award for past overtime lost is supported in the record and is not in error except that the Court failed to discount the award to reflect its value as of the date of the complaint.

The award for lost future overtime presents greater problems. First, however, we agree that Clissold's disability will likely cause a reduction in overtime, and we note that prior to the accident he consistently availed himself of opportunities to work overtime. The proof also supports the inference that Kellogg will continue to offer overtime in the future. The problem is that here again the District Court assumed that Clissold would necessarily be transferred to a staff job where there would be no overtime opportunities. This was of course possible but not reasonably certain. Further, the District Court assumed that except for the accident Clissold would have continued to work the same amount of overtime, at age 60, and until retirement, as he had worked at age 40. We believe that this is unlikely. The Court also overlooked the fact that Kellogg requires workers to take some of their earned overtime as compensatory time off rather than as overtime pay. Finally, we note that the Court used an incorrect method of calculation, one which is similar to that which was employed in computing lost future wages. The correct method is stated in *Bruno, supra.*

Considering the errors noted, and also accounting for the required discounting and interest to the date of the entry of judgment of this court, we believe that the maximum permissible award for lost overtime, past and future, is $119,312.50.[4]

---

**4.** The defendant has argued that the awards for lost future wages and overtime should be reduced by future income tax payments. No Michigan appellate decision has been found

### Loss of Consortium

The District Court awarded Ingebord Clissold $30,100 for loss of consortium. To establish a loss of consortium there must be a showing of harm to the marital relationship caused by the injury to Wallace Clissold. *Washington v. Jones,* 386 Mich. 466, 192 N.W.2d 234 (1971). There must be a showing of harm to the incidents of the relationship, including society, companionship, services, and affection. *Id., Montgomery v. Stephan,* 359 Mich. 33, 101 N.W.2d 227 (1960). In this case the proof established that Wallace Clissold had become irritable on occasions and that he was unable to perform satisfactorily certain household duties. While we believe that this evidence was sufficient to support an award for loss of consortium, we also believe that the amount of the award was excessive, or shocking, on these facts. *See Yates v. Wenk, supra.*

In addition, the Court failed to make the required discounting under *Bruno, supra.* In our opinion the maximum permissible award for loss of consortium, after discounting and interest to the date of the filing of this opinion, is $15,050.

The judgment of the District Court is modified as follows:

| | |
|---|---|
| To Wallace Clissold | $ 277,024.91 |
| To Ingebord Clissold | $ 15,050.00 |

These amounts include the award for hospital and medical expenses and reflect the discounting of appropriate amounts to the date of the complaint. Although the defendant did not raise this point in every appropriate item, we view the District Court's improper discounting as plain error. The amounts before stated also reflect the addition of interest to the date of the entry of judgment of this Court.

As modified, the judgment of the District Court is affirmed. *See Drayton v.*

*Jiffee Chemical Corp.,* 591 F.2d 352, 366–67 (6th Cir. 1978); 28 U.S.C. § 2106; 6A Moore's Federal Practice ¶ 59.05[3] at 59–68. Where remittiturs or reductions in clearly erroneous awards of excessive damages are ordered by an appellate court they are not regarded as taken out of thin air, as the dissent seems to indicate.

MERRITT, Circuit Judge, dissenting.

I respectfully dissent. The Court's opinion, though purportedly based on Michigan law, pulls from thin air arbitrary figures as the maximum allowable award for each item of damages. These figures reflect neither the proof in the record nor the liberality of Michigan courts towards damage awards. Although I believe the District Court erred in several respects and that the damages awarded were too high as a result, I would remand the case to the District Court for correction of the errors and recomputation of the award.

### I. Future Pain and Suffering

The Court claims that the award of $68,390 for future pain and suffering is excessive because Clissold will suffer less in the future than during the 4½ years prior to the trial. The District Judge awarded damages at the same rate of $5,000 per year. Clissold will continue to have some pain, immobility and awkwardness. His recreation will be limited. The District Court found that it is likely that he will have arthritis.

Michigan courts have seldom reduced damage awards for pain and suffering.[1] Recently, in *Pippen v. Denison,* 66 Mich. App. 664, 239 N.W.2d 704 (1976), the Michigan Court of Appeals approved a $1,250,000 damage award to a 67-year-old man for the

---

which supports this view. Where state law is silent we have refused to make such an adjustment, at least at middle income levels. *Kalavity v. United States,* 584 F.2d 809, 812 (6th Cir. 1978) (citing cases).

1. *Phillips v. Rolston,* 376 Mich. 264, 137 N.W.2d 158 (1965); *Bennett v. Hill,* 342 Mich.

754, 71 N.W.2d 220 (1955); *Day v. Toyer,* 341 Mich. 189, 67 N.W.2d 74, (1954); *Torma v. Montgomery Ward & Co.,* 336 Mich. 468, 58 N.W.2d 149 (1953); *Vink v. House,* 336 Mich. 292, 57 N.W.2d 887 (1953); *Denny v. Garavaglia,* 333 Mich. 317, 52 N.W.2d 521 (1952).

loss of his arm. Approximately $1,100,000 of the award was for pain and suffering, or $80,000 per year for the plaintiff's life expectancy. 239 N.W.2d at 710–13 (Gillis, J. dissenting). Although the loss of an arm is more extreme than the injuries suffered by Clissold, the award for pain and suffering in *Pippen* was much larger. The *Pippen* case demonstrates to me the liberality of Michigan courts and the deference given to trial courts in setting awards for pain and suffering.

In view of this attitude of Michigan's courts, I do not believe that an award of $5,000 per year for Clissold's future pain and suffering is excessive. The Court's opinion that the award is excessive and shocks the judicial conscience fails to recognize that it is the conscience of the Michigan appellate courts to which we must look. The District Court, however, did err by not reducing the award to its value at the time the complaint was filed.[2] Accordingly, I would vacate the award for future pain and suffering and remand for correction of this error.

## II.  Lost Future Wages

The Court arbitrarily reduces the District Court's award for loss of future wage earning capacity from $143,684.83 to $83,348.41. Although the Court cites *Bruno v. Detroit Institute of Technology,* 51 Mich.App. 593, 215 N.W.2d 745 (1974), to indicate the process by which damages for loss of future earning capacity are calculated in Michigan, the Court does not attempt to apply *Bruno* to the facts of this case. Rather, the Court decrees that $83,398.41 is all that plaintiff is entitled to. This figure also came from thin air.

Furthermore, the Court has held the plaintiff to a burden of proof for recovery of lost future earning capacity more stringent than Michigan law requires. To recover for such future losses, a plaintiff must prove (1) that he has suffered a loss of future earning capacity and (2) the monetary amount of the future loss. The Court correctly states that, to prove the first element, loss of capacity, the plaintiff must show that the loss is of "such a degree of probability . . . as to amount to [a] reasonable certainty." *Kellom v. City of Ecorse,* 329 Mich. 303, 45 N.W.2d 293, 295 (1951). The Court apparently concluded that the plaintiff had met this burden or it would not have affirmed the award as modified.

Regarding the second element of proof, *i. e.* the actual amount of loss, the Court held that the District Court's award was "based on undue speculation so that the loss was not in all respects 'a reasonable certainty'." By requiring the actual amount of future loss to be proven to a reasonable certainty, the majority misconstrued Michigan law. Once the loss of capacity has been proven to a reasonable certainty, Michigan courts have been historically liberal regarding the calculation of the actual award. This liberality reflects the hypothetical and speculative nature of all future projections. As stated in *Allison v. Chandler,* 11 Mich. 542 (1863):

> Since, from the nature of the case, the damages cannot be estimated with certainty, and there is a risk of giving by one course of trial less, and by the other course more than a fair compensation—to say nothing of justice—does not sound policy require that the risk should be thrown upon the wrong doer instead of the injured party?

*Id.* at 554–56[3] The majority ignored *Allison* and cast upon the plaintiff the risk of uncertainty.

The proof of future wage loss was not too speculative and the District Court was not clearly wrong in estimating the loss. The

---

**2.**  *See* note 4 *infra.*

**3.**  *See also Phillips v. Rolston,* supra note 1, 137 N.W.2d at 161; *Schankin v. Buskirk,* 354 Mich. 490, 93 N.W.2d 293, 297–98 (1958); *Coger v. Mackinaw Prod. Co.,* 48 Mich.App. 113, 210 N.W.2d 124, 130–31 (1973).

evidence shows that Clissold's loss could be as great as 25 per cent for 21½ years, adjusted by a 7.44 per cent annual cost of living increase. The District Judge's award was "within the range of the proof." *Pierce v. New York Central Railroad Co.,* 409 F.2d 1392, 1397 (6th Cir. 1969). Therefore, I would affirm the substance of the award for loss of future wage earning capacity. I would, however, remand for recomputation of the award after the correction of the following two errors:

**A. Method of reduction to present value.**—The process by which the District Court arrived at the figure of $143,684.83 as the present value of Clissold's loss of future wage earning capacity is somewhat unclear. It is apparent that the District Court based its calculations on a determination that Clissold's "average" future weekly wage loss over the 21½ year period would amount to $247.87. The lower court then reduced this "average" weekly loss to present value as of the date of judgment by a formula not explained in its opinion, and apparently calculated the present value of Clissold's average annual future wage loss by multiplying this figure by 21½ years to arrive at $143,684.83 as the present value of Clissold's future wage losses.

This method of calculating present value is not proper under Michigan law. According to the *Bruno* case, *supra,* the proper method is to (i) compute the actual loss for *each year* in the future, (ii) reduce the loss for each future year to present value, and (iii) take the sum of these properly reduced figures. 215 N.W.2d at 749. Applying the

*Bruno* formula to this case, it is evident that the District Judge's figure overstates the present value of Clissold's future wage loss. In the appendix to this dissent I have, for purposes of illustration, calculated the present value by the *Bruno* method. I arrived at a figure of $130,505.55, some $13,000 less than the District Judge awarded.

**B. Reduction to date of complaint.**—Michigan law also requires that future damage awards be reduced to their value as of the date the complaint was filed.[4] It appears that the District Court reduced the award only to its value as of the date of judgment.

### III. Lost Overtime

I agree with the Court's opinion on this element of damages to the extent that it points out instances where the proof of loss of future overtime was unclear. I would, however, remand the issue to the District Court instead of again pulling a figure out of the air.

### IV. Loss of Consortium

I do not believe that the award to Mrs. Clissold of $30,100 for loss of consortium is grossly excessive. Michigan courts have displayed the same reluctance to reduce loss of consortium awards[5] as they have regarding claims for pain and suffering.[6] In view of this liberal approach, I do not believe that a Michigan court would find the award excessive. Accordingly, I would affirm the District Court's award for this item of damages.

Appendix to follow.

---

4. *Bruno, supra,* 215 N.W.2d at 749. Of course, once an award is reduced to value as of the date of complaint, interest may then be added. Mich.Comp.Laws Ann. § 600.6013 (1967).

5. *Pippen v. Denison,* 66 Mich.App. 664, 239 N.W.2d 704 (1976), discussed *supra,* held that $500,000 for loss of consortium was not exces-

sive. *See also Hixson v. Schefke,* 40 Mich.App. 218, 198 N.W.2d 758 (1972) ($5,000 held not excessive); *Asmus v. Barrett,* 30 Mich.App. 570, 186 N.W.2d 819 (1971) ($5,400 not excessive).

6. *See* note 1 *supra* and accompanying text.

44

The difference between the District Court's method of computation and that set out in *Bruno v. Detroit Institute of Technology*, 51 Mich.App. 593, 215 N.W.2d 745, 749 (1974), is illustrated by the table below.: If Clissold's wage loss for each of the 21½ years of his working future is reduced to present value, and the total taken, it becomes apparent that the district judge's award of $143,684.83 overstates the present value of the award. Applying *Bruno's* formula, I arrive at a figure of $130,505.55 as the present value as of the date of trial * of Clissold's future wage losses.

## APPENDIX

| 1 YEAR (21.5 years) | 2 PROJECTED WEEKLY WAGE (7.44% annual increase) | 3 PROJECTED ANNUAL WAGE LOSS (Col. 2 x 52 x 25%) | 4 DISCOUNT RATE (6% per year for 21.5 years) | 5 PRESENT VALUE OF ANNUAL WAGE LOSSES (Col. 3 x Col. 4) |
|---|---|---|---|---|
| ½ | 402.50 | 2616.25 | 1.00000 | 2616.25 |
| 1 | 432.45 | 5621.85 | .94339 | 5303.60 |
| 2 | 464.62 | 6040.06 | .88999 | 5375.59 |
| 3 | 499.19 | 6489.47 | .83961 | 5448.62 |
| 4 | 536.33 | 6972.29 | .79209 | 5522.19 |
| 5 | 576.23 | 7490.99 | .74725 | 5597.64 |
| 6 | 619.10 | 8048.30 | .70496 | 5673.73 |
| 7 | 665.16 | 8647.08 | .66505 | 5750.74 |
| 8 | 715.65 | 9290.45 | .62741 | 5828.92 |
| 9 | 767.82 | 9981.66 | .59189 | 5908.04 |
| 10 | 824.95 | 10724.35 | .55839 | 5988.37 |
| 11 | 886.33 | 11522.29 | .52678 | 6069.71 |
| 12 | 952.27 | 12379.51 | .49696 | 6152.12 |
| 13 | 1023.12 | 13300.56 | .46883 | 6235.70 |
| 14 | 1099.24 | 14290.12 | .44230 | 6320.52 |
| 15 | 1181.02 | 15353.26 | .41726 | 6406.30 |
| 16 | 1268.89 | 16495.57 | .39364 | 6493.32 |
| 17 | 1363.30 | 17722.90 | .37136 | 6581.58 |
| 18 | 1464.73 | 19041.49 | .35034 | 6671.00 |
| 19 | 1573.71 | 20458.23 | .33051 | 6761.65 |
| 20 | 1690.79 | 21980.27 | .31180 | 6853.45 |
| 21 | 1816.58 | 23615.54 | .29415 | 6946.51 |

TOTAL     $130,505.55

* Of course, this figure must be reduced to its value as of the date the complaint was filed. Interest may then be added at the statutory rate.