**PANHANDLE EASTERN PIPE LINE CO., Plaintiff,**

v.

**MICHIGAN CONSOLIDATED GAS COMPANY, Defendant.**

No. 95–XCV–70970–DT.

United States District Court,
E.D. Michigan,
Southern Division.

Feb. 16, 1996.

Carson C. Grunewald, James A. Smith, Detroit, MI, for plaintiff.

Jeffrey M. Petrash, Washington, D.C., Noel D. Massie, Dennis R. O'Connell, Glen W. Johnson, Detroit, MI, for defendant.

## OPINION

DUGGAN, District Judge

### I. Introduction

On March 10, 1995, Panhandle Eastern Pipe Line Company ("Panhandle" or "plain-

tiff") filed suit in this Court based on diversity of citizenship against Michigan Consolidated Gas Company ("MichCon" or "defendant") to recover $4,385,071.60 plus interest on that amount as of March 15, 1995 based on October 14, 1994 and February 13, 1995 orders of the Federal Energy Regulatory Commission ("the FERC orders"). Currently before this Court is plaintiff's motion for judgment on the pleadings or for summary judgment. Oral argument was originally scheduled on this motion for August 3, 1995; however, the parties waived oral argument. On October 17, 1995, this Court sent correspondence to counsel identifying questions the Court had and rescheduling oral argument in an effort to obtain answers to those questions. On October 25, this Court held oral argument on plaintiff's motion. At the conclusion of that argument, defendant made an oral cross-motion for summary judgment relying on the submitted pleadings. Both parties' counsel conceded at oral argument that no genuine issue of material fact exists in this case, and that the sole question before the Court is a legal one: whether this Court can enter judgment in favor of plaintiff based on the FERC orders.

## II. Background

Plaintiff is an interstate natural gas pipeline company based in Houston, Texas, which is engaged in the transportation of natural gas, subject under the Natural Gas Act of 1938, 15 U.S.C. § 717, *et seq.* to the jurisdiction of the FERC. For many years, plaintiff has provided service (pursuant to gas sales contracts) principally to wholesale gas customers in the midwest portion of the United States and has supplied gas to a number of gas utilities in the State of Michigan.

Defendant is a local distribution company based in Detroit, Michigan, which serves 1.1 million residential, commercial and industrial customers throughout Michigan. Defendant is regulated as a "utility" by the Michigan Public Service Commission ("MPSC") under M.C.L.A. § 460.61, which requires defendant to obtain gas at the lowest reasonable cost for resale to its customers.

On April 26, 1982, plaintiff and defendant entered into a "Gas Sales Contract" to commence on July 1, 1982 and to continue in effect until October 31, 1988. *See* Pl.'s Compl., Ex. A.

In 1985, plaintiff petitioned the FERC for authority to "direct bill" its gas-purchase customers (including MichCon) for certain payments plaintiff had made to gas producers for "production-related" charges established by the FERC's Order No. 94. Plaintiff sought this authorization over a one-year period. The FERC approved the direct billing authority in 1985. During 1985, 1986 and 1988, defendant paid plaintiff $5.4 million in direct-bill charges.

In *Columbia Gas Transmission Corp. v. FERC,* 831 F.2d 1135 (D.C.Cir.1987) (*Columbia I* ), *on reh'g,* 844 F.2d 879 (D.C.Cir.1988), the Court found that plaintiff's direct-billing mechanism violated the filed-rate doctrine and reversed the FERC's orders as exceeding their authority.

On October 25, 1991, defendant filed an action with the D.C. Circuit based on the FERC's failure to order refunds of plaintiff's unlawfully-collected, direct bill charges. After defendant filed its reply brief in that action, the FERC, on February 11, 1993, required plaintiff to refund, with interest, the amounts it previously collected from defendant as part of plaintiff's gas-sale rates. Regarding the interest portion, the FERC stated:

> ... the Commission does not believe that MichCon ... should lose the time value to the amounts [it] paid to Panhandle pursuant to an invalid direct bill. As between Panhandle on the one hand, and MichCon ... on the other, it appears more appropriate that Panhandle, which made the original illegal direct bill proposal that led to this protracted litigation, bear the cost of the carrying charges.

*See* Pl.'s Compl., Ex. B at 61,836.

On March 12, 1993, plaintiff paid defendant $5,426,740.67 as a refund and $4,385,071.60 in interest as required by the February 11, 1993 FERC order. In July 1993, defendant returned this amount to its customers through the Gas Cost Recovery proceedings before the MPSC.

On August 19, 1993, plaintiff appealed the FERC's February 11, 1993 order to the D.C. Circuit. The FERC moved the D.C. Circuit to remand plaintiff's appeal to it; the D.C. Circuit granted the FERC's motion on March 7, 1994. On October 14, 1994, the FERC issued an order on remand partially reversing itself, which states in pertinent part:

The Commission orders:

Effective with the issuance of this order, Panhandle is authorized to bill MichCon ... for the interest Panhandle paid on the refunds to MichCon ... of the principal amount of ... costs previously collected from MichCon ... pursuant to the unlawful direct bill. Panhandle's bill shall be for the actual amount of interest which it paid to MichCon ... and shall not include any interest accruing on that interest.

*See* Pl.'s Compl., Ex. D at 61,193.

On November 10, 1994, defendant requested rehearing of the FERC's October 14, 1994 order.[1] On February 13, 1995, the FERC issued an order authorizing plaintiff to collect interest-on-the-interest from defendant as of March 15, 1995. *See* Pl.'s Compl., Ex. G at 12.[2] On February 23, 1995, defendant appealed the October 14, 1994 and February 13, 1995 FERC orders to the D.C. Circuit; on March 13, 1995, plaintiff petitioned the D.C. Circuit for review of those orders. Two days later, defendant filed a request for rehearing with the FERC of the "interest-upon-interest" aspect of the February 13, 1995 order pursuant to 15 U.S.C. § 717r(a), which was denied on April 13, 1995.

### III.  Standard of Review

Under Fed.R.Civ.P. 56(c), the party moving for summary judgment bears the initial burden of informing the court of the reason(s) for its motion and of identifying the absence of a genuine issue of material fact.

---

**1.** Plaintiff also filed a request for rehearing as to the principal refund requirement of the October 14, 1994 order.

**2.** Plaintiff was allowed to bill defendant for the interest-on-the-interest only if defendant failed to pay the $4.4 million billed to it within thirty days of the February 13, 1995 order. (Pl.'s Compl., Ex. G at 12).

*Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. at 2552. The substantive law identifies which facts are material, and once materiality of a fact is established, the court must determine whether a genuine issue regarding that fact exists in the record. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

In the present case, the parties agree that no disputed facts of any kind exist. The sole issue before the Court is whether this Court has the power to enter judgment in favor of plaintiff based on the FERC orders.

### IV.  Discussion

The effectiveness of FERC orders while judicial review is pending is addressed by section 19 of the Natural Gas Act, 15 U.S.C. § 717r(c). That section provides:

[t]he filing of an application for rehearing [before the Commission] under subsection (a) of this section shall not, unless specifically ordered by the Commission, operate as a stay of the Commission's order. The commencement of proceedings under subsection (b) of this section [review in a court of appeals] shall not, unless specifically ordered by the court, operate as a stay of the Commission's order.

15 U.S.C. § 717r(c). Defendant concedes that neither the FERC or the D.C. Circuit issued a stay of the FERC orders at issue. In *Ecee, Inc. v. Federal Power Comm'n,*[3] 526 F.2d 1270, 1274 (5th Cir.), *cert. denied,* 429 U.S. 867, 97 S.Ct. 176, 50 L.Ed.2d 147 (1976), the Court found that "[t]he fact that the [Commission's order] was ripe for judicial

---

**3.** The "Federal Power Commission" or "FPC" is the FERC's predecessor. *See, e.g., Thomas Hodgson & Sons, Inc. v. FERC,* 49 F.3d 822, 826 (1st Cir.1995); *Williams Natural Gas Co. v. FERC,* 3 F.3d 1544, 1546 (D.C.Cir.1993).

review was the 'touchstone of finality.'" That Court found further that "[i]n the absence of a stay, the FPC's orders are entitled to have administrative operation and effect during the disposition of the proceedings." *Id.*

■ In the present case, defendant concedes that the FERC orders at issue are final although the subjects of ongoing appellate review. *See* Def.'s Reply Br. to Pl.'s Br. in Opp'n to Def.'s Mot. to Stay at 3; Def.'s Br. in Opp'n to Pl.'s Mot. for J. on Pldgs. at 10, 10 n. 26. Defendant's main argument against plaintiff's present motion is that plaintiff has no *contractual* basis upon which to recover monies from defendant, because the parties' contract terminated on October 31, 1988, over six years before the FERC authorized plaintiff to collect $4.4 million in interest from defendant. Defendant argues in the alternative that the FERC only authorized plaintiff to "bill" defendant and did not order defendant to "pay" plaintiff, because the FERC could not do so as it lacks jurisdiction over defendant.

Although plaintiff does not rely on an "independent" contract theory as the basis of its right to recover, plaintiff does contend that its right to recover is based on the contractual relationship that existed between the parties, and that the 1985 FERC order authorizing plaintiff to "direct bill" MichCon was based on and related to the "Gas Sales Contract" between the parties which was then in effect. Defendant paid plaintiff $5.4 million pursuant to that order. After the D.C. Circuit ruled that such "direct billing" was improper, defendant, after the contract between the parties was terminated, sought a refund of the monies that it had "improperly" paid to plaintiff. Based on defendant's request, the FERC on February 11, 1993 ordered plaintiff to refund the amounts that it "improperly" collected from defendant together with interest on that sum. Although the contract between the parties had terminated, in this Court's opinion, the FERC order of February 11, 1993 was clearly related to and based upon the contractual relationship that had existed between the parties.

Plaintiff, in a supplemental memorandum filed in support of its pending motion on October 23, 1995, identified its claim as one "for enforcement of the FERC's order in the sense that all contract liabilities and rights have been determined by final order and only the enforcement of those liabilities is required." (Pl.'s Supp'l Mem. at 1). Plaintiff then provides that its present claim "is based both on the original contract and on the FERC's orders." *Id.* at 7. Plaintiff subsequently indicates that:

> [i]t is clear from the FERC orders that the FERC has adjudicated liabilities under that contract for deliveries made and charges imposed during the contract term. For that reason, this case is *not* an original contract action, in the sense that Panhandle is not asking the court to adjudicate contract liabilities which the FERC already has adjudicated. Rather, the FERC has determined the duties of the parties and Panhandle is asking the Court to enforce them. *The Court's authority to enforce FERC orders is stated clearly in the Natural Gas Act, 15 U.S.C. [§] 717u.*

*Id.* at 8–9 (emphases added).[4] Section 717u provides in pertinent part:

> The District Courts of the United States ... shall have exclusive jurisdiction of violation of this chapter [Natural Gas Act] or the rules, regulations, and orders thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by, or to enjoin any violation of, this chapter or any rule, regulation, or order thereunder....

15 U.S.C. § 717u.

Defendant is correct when it asserts that plaintiff's reliance on *City of Cleveland v. Cleveland Elec. Illuminating Co.*, 570 F.2d 123 (6th Cir.1978) is misplaced, because in that case, there was an order to "pay"; whereas in this case, the FERC did not enter an order requiring defendant to pay plaintiff. The Commission simply ordered that plaintiff

---

**4.** At oral argument, plaintiff's counsel asserted that although it could have brought a claim for restitution, unjust enrichment or breach of contract, it did not because all of those theories require the Court to apply the law to the facts of the case. Panhandle asserts that the FERC has already "decided" any contract issues between the parties.

could seek to recover the interest it paid to defendant. Such distinction does not, in this Court's opinion, preclude plaintiff from its right to recover. As defendant has acknowledged, the FERC did not order defendant to "pay" because it did not have jurisdiction over defendant. *See* Hr'g Tr. at 18–19 (Oct. 25, 1995). However, § 717u provides this Court with jurisdiction over "... all suits ... brought to enforce any liability or duty created by ... any ... order thereunder." In this Court's opinion, defendant's duty to pay plaintiff the amount of interest was "created by" the October 14, 1994 FERC order which acknowledged that its order of February 11, 1993 requiring plaintiff to pay interest to defendant was in error, and which authorized plaintiff to seek to recover such "improperly" paid interest. At the hearing on October 25, 1995, counsel for defendant acknowledged that plaintiff paid this interest to defendant based on the order of February 11, 1993, *see* Hr'g Tr. at 25, and that the FERC, by its order of October 14, 1994, acknowledged that its prior order was a "mistake." *Id.* at 25–26. Therefore, defendant's liability to plaintiff was, in this Court's opinion, "created by" the order of October 14, 1994.

This Court agrees with plaintiff that its right to recover the money it seeks is related to the contractual relationship that existed between the parties, and that the parties' rights under that contract have been determined by the FERC. Defendant has offered nothing to persuade this Court that FERC does not have the right to make a determination relating to the contractual relationship of the parties. In fact, after the formal termination of their contractual relationship, defendant sought and obtained relief from the FERC by asking it to determine that defendant was entitled to a refund of the "direct bill" payments (plus interest) it paid to plaintiff in 1985, 1986 and 1988. Therefore, this Court is satisfied that FERC had the authority to make a determination that plaintiff was entitled to seek recovery of the interest it "improperly" paid.[5] Defendant has not asserted any "factual" defense to plaintiff's right to recover, and in fact has acknowl-

edged that the issue can be disposed of by summary judgment. The "undisputed facts" which this Court believes entitle plaintiff to recover are:

(1) as a result of the contractual relationship between the parties and the FERC order issued in 1985, plaintiff "improperly" collected from defendant "direct bill" payments;

(2) based on the contractual relationship between the parties and the FERC order of February 11, 1993, plaintiff refunded to defendant the monies it "improperly" collected pursuant to the 1985 order, and also paid to defendant interest on such sum totalling $4,385,071.60; and

(3) by its order of October 14, 1994, the FERC acknowledged that it was in error when it ordered, on February 11, 1993, that plaintiff pay the interest to defendant.

In this Court's opinion, plaintiff has therefore established, as a matter of law, that it is entitled to recover the interest it paid to defendant in the amount of $4,385,071.60.

■ Panhandle also seeks interest on that amount of interest. Plaintiff contends that it has a right to such interest-on-the-interest because of the FERC order of February 13, 1995, which states "[b]eginning 30 days from the date of issuance of this order, MichCon ... will be liable for interest on any unpaid interest due Panhandle." (Pl.'s Compl., Ex. G at 13). The Court agrees with the FERC's determination that Panhandle is entitled to interest-on-the-interest. However, this Court believes that such interest should begin to run from the date the complaint in this action was filed, March 10, 1995. Plaintiff asserts, in its complaint, that this case is here based on diversity of citizenship. Therefore, in this Court's opinion, Michigan law should be followed in awarding prejudgment interest to plaintiff. *See* M.C.L.A. § 600.6013.

■ "[F]ederal courts sitting in Michigan diversity cases are required to apply M.C.L.A. § 600.6013." *Clissold v. St. Louis–*

---

**5.** The Court recognizes that defendant is challenging, in the D.C. Circuit, the *correctness* of the FERC determination.

*San Francisco Railway Co.,* 600 F.2d 35, 39 n. 3 (6th Cir.1979). *See Laborers' Pension Trust Fund–Detroit & Vicinity v. Family Cement Co.,* 677 F.Supp. 896, 898 (E.D.Mich. 1987). The statute provides in pertinent part:

> Interest shall be allowed on a money judgment recovered in a civil action, as provided in this section. . . .

   *    *    *    *    *    *

> . . . for complaints filed on or after January 1, 1987, interest on a money judgment recovered in a civil action shall be calculated at 6–month intervals from the date of filing the complaint at a rate of interest that is equal to 1% plus the average interest rate paid at auctions of 5–year United States treasury notes during the 6 months immediately preceding July 1 and January 1, as certified by the state treasurer, and compounded annually, pursuant to this section. Interest under this subsection shall be calculated on the entire amount of the money judgment, including attorney fees and other costs. However, the amount of interest attributable to that part of the money judgment from which attorney fees are paid shall be retained by the plaintiff, and not paid to the plaintiff's attorney.

M.C.L.A. § 600.6013(1), (6). The Michigan statute "mandates that interest run from the date of the filing of the complaint." *Clissold,* 600 F.2d at 38–39.

For the reasons stated, it is the opinion of this Court that plaintiff is entitled to interest on $4,385,071.60, the amount of money being awarded under this judgment.

In reaching the conclusions set forth in this Opinion, the Court is relying, in significant part, on the "orders" of the FERC of October 14, 1994 and February 13, 1995. This Court recognizes that both of these orders are the subjects of an appeal before the D.C. Circuit. Because the Court is not persuaded that defendant is entitled to a stay of proceedings,[6] the Court is issuing this

Opinion at this time. However, the Court makes, as an express part of this Opinion and ultimate judgment, that if the FERC order of October 14, 1994 is reversed by the D.C. Circuit or modified in some manner, defendant shall have the right to seek reconsideration of the Court's decision in this case and any judgment upon which it was based, without regard to any time limits for filing motions for reconsideration and/or to amend judgment contained in the Local Rules or the Federal Rules of Civil Procedure.[7]

Counsel for plaintiff shall submit a proposed order, consistent with this Opinion, and approved as to form by defense counsel.

---

**6.** On July 5, 1995, this Court entered an Order denying defendant's motion for stay of proceedings.

**7.** By allowing defendant the opportunity to seek reconsideration, the Court does not imply that it

will necessarily change its ruling. Such procedure will simply allow defendant to bring to the Court's attention the decision of the D.C. Circuit, to the extent that it might, in this Court's opinion, warrant a different result.