24 So.3d 232 (2009)
Dr. Marion BONAPARTE
v.
The BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY and Agricultural and Mechanical College, the Board of Supervisors of Southern University and Agricultural and Mechanical College, The Board of Supervisors of Community and Technical Colleges And The Baton Rouge Community College Management Council.
No. 2009 CA 0153.
Court of Appeal of Louisiana, First Circuit.
September 11, 2009.
Writ Denied December 11, 2009.
*233 Floyd J. Falcon, Jr., Daniel L. Avant, Baton Rouge, Louisiana, for Plaintiff/Appellee, Dr. Marion Bonaparte.
Leo C. Hamilton Jerry L. Stovall, Jr., Baton Rouge, Louisiana, for Defendant/Appellant, Board of Supervisors of the Louisiana Community and Technical College System.
Before: DOWNING, GAIDRY, and McCLENDON, JJ.
GAIDRY, J.
The former chancellor of a community college was awarded lost salary for a teaching position in his academic field following his termination as chancellor. The state board charged with management of community and technical colleges appeals the trial court's judgment granting the award, and the former chancellor has answered the appeal. For the following reasons, we reverse the trial court's judgment and deny the answer to the appeal.

FACTUAL AND PROCEDURAL BACKGROUND
The Baton Rouge Community College (BRCC) was established by Acts 1995, No. 921, § 1, effective June 28, 1995, as a two-year institution of higher learning. La. R.S. 17:3222. At the time it was established, BRCC was managed jointly by the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College (LSU) and the Board of Supervisors of Southern University and Agricultural and Mechanical College (Southern). LSU and Southern in turn established a joint Management Council, and delegated their administrative and management functions to the Management Council.
The Management Council selected Marion Bonaparte, Ed.D., as its first chancellor. By letter dated December 20, 1995, Dr. Bonaparte was offered the position. The letter provided, in pertinent part:
This Letter of Appointment ... is sent to confirm your selection as Chancellor of the Baton Rouge Community College by the Management Council at its meeting on December 8, 1995. The terms of this offer of employment are stated below....

The Management Council of the Baton Rouge Community College has authorized your appointment as Chancellor under the following terms:
...
6. The Chancellor shall be offered tenure in his academic area.

....
In accordance with the laws of the State of Louisiana, the Chancellors serve in their positions at the pleasure of the Boards of Supervisors. In that the Boards of Supervisors have delegated their powers to the Management Council, except those enumerated in the Bylaws of the Management Council, the Chancellor of the Baton Rouge Community College shall serve at the pleasure of the Management Council....

As Chancellor, ... you are expected to successfully develop, design and implement a plan to open and begin operation of a comprehensive community college in Baton Rouge, Louisiana by the Fall of 1997. The particulars for accomplishing this task will result from discussions between you and the System Presidents in the very near future. Following these discussions, the Presidents will recommend to the Management *234 Council a description of the duties and responsibilities for the Chancellor....
(Emphasis added.)
Article VII, Section G of the Management Council's Bylaws established an Academic and Student Affairs Committee, responsible for "matters concerning academic organization, curricula, personnel, tenure, and all other matters relating to faculty and students." (Emphasis added.) Article IX, Section B of the Bylaws granted the BRCC chancellor broad discretionary powers related to the administration and operation of BRCC, and Article IX, Section C authorized the chancellor to make appointments, promotions, transfers, suspensions, and dismissals of academic employees, subject to the approval of the LSU and Southern presidents and confirmation by the Management Council.
By Acts 1998, 1st Ex. Sess., No. 151, § 1, effective July 1, 1999, the control, supervision, and management of BRCC was transferred to the Louisiana Board of Supervisors of Community and Technical Colleges (Board of Supervisors). Dr. Bonaparte's employment as chancellor was terminated by vote of the Board of Supervisors on August 11, 1999.
On December 15, 1999, Dr. Bonaparte filed a petition seeking damages and a tenured academic position. Named as defendants were LSU, Southern, the Management Council, and the Board of Supervisors.[1] He alleged that he was terminated from the position of chancellor without cause and that the defendants refused to grant him an academic position with tenure, thereby breaching their contractual obligations to him.
This matter was tried on June 6, 2008. Following the conclusion of trial, the trial court took the matter under advisement and ordered the submission of post-trial memoranda. On September 15, 2008, the trial court issued oral reasons for judgment, finding that Dr. Bonaparte was not entitled to academic tenure, but finding that he was nevertheless entitled to "lost salary" in an academic position in the total amount of $124,726.00. The trial court's judgment was signed on September 19, 2008.
The Board of Supervisors appeals. Dr. Bonaparte has answered the appeal, seeking an increase in the award of damages and reversal of the trial court's decision denying tenure.

ANALYSIS
The parties do not dispute that Dr. Bonaparte held the position of chancellor of BRCC at the pleasure of the Board of Supervisors, as successor to LSU, Southern, and their Management Council. The issue is whether he was entitled to tenure in his academic field despite his termination as chancellor, thereby entitling him to damages and other relief.
The process and considerations that lead to the ultimate decision granting or denying a professor's tenure application are matters pertaining to the internal management of a university. Jones v. Southern Univ. & A & M College System, 96-1430, p. 5 (La.App. 1st Cir.5/9/97), 693 So.2d 1265, 1268. The academic tenure process is generally recognized as intrinsically subjective. Such a determination is not readily scrutinized in the adversarial *235 judicial forum. Spuler v. Pickar, 958 F.2d 103, 107 (5th Cir.1992).
Establishment of a formal tenure process generally precludes a reasonable expectation of continued employment for non-tenured faculty. Huang v. La. State Bd. Of Trustees for State Colleges & Universities, 99-2805, p. 7 (La.App. 1st Cir.12/22/00), 781 So.2d 1, 7, citing Spuler, 958 F.2d at 107. An obvious corollary to the foregoing principle is that if no tenure process is established, all faculty are non-tenured, and thus are at-will employees. See La. C.C. arts. 2024 and 2747.
A conditional obligation is one dependent on an uncertain event. If the obligation may not be enforced until the uncertain event occurs, the condition is suspensive. La. C.C. art. 1767. A suspensive condition "may be either expressed in a stipulation or implied by the law, the nature of the contract, or the intent of the parties." La. C.C. art. 1768.
The overwhelming preponderance of the evidence in the record demonstrates that no formal tenure process was ever established at BRCC. By Dr. Bonaparte's own admission, neither the faculty handbook nor the tenure process had been established when he was terminated from his employment as chancellor, although they were in the process of being developed. Even if Dr. Bonaparte would have been automatically entitled to tenure in his academic area, or to an offer of tenure, simply by virtue of his position as chancellor, without any application for same on his part, such a benefit would necessarily be predicated upon the existence of an established tenure process. The evidence is likewise clear that it was Dr. Bonaparte's responsibility as chancellor to establish such a process. He did not accomplish that task during the course of his employment as chancellor. Thus, the implicit suspensive condition that would have entitled Dr. Bonaparte to tenure in his academic field was never fulfilled prior to the termination of his employment as chancellor. The provision in the letter of appointment that "[t]he Chancellor shall be offered tenure in his academic area" cannot reasonably be interpreted as an immediate grant of tenure, or an unqualified promise of future tenure. See Gottlieb v. Tulane Univ. of La., 529 So.2d 128, 131-33 (La.App. 4th Cir.), writ denied, 532 So.2d 766 (La.1988). If a tenure process had in fact been in place when Dr. Bonaparte was hired as chancellor, or established prior to his termination as chancellor, the result we reach might very well be different. See Bruno v. Detroit Inst, of Tech., 51 Mich.App. 593, 215 N.W.2d 745 (1974).
Based upon our review of the record, we conclude that there is no factual or legal basis for the trial court's award to Dr. Bonaparte. Accordingly, the judgment of the trial court is reversed. For the same reasons, we deny Dr. Bonaparte's answer to the appeal. All costs of this appeal are assessed to the plaintiff-appellee, Marion Bonaparte, Ed.D.
REVERSED; ANSWER TO APPEAL DENIED.
McCLENDON, J., concurs.
NOTES
[1] LSU, Southern, and, by extension, their Management Council were subsequently dismissed by this court's supervisory writ reversing the trial court's judgment overruling a peremptory exception of no cause of action. Bonaparte v. Bd. of Supervisors of La. St. Univ. & Agric. & Mech. College, 2006 CW 0124 (La.App. 1st Cir.3/6/06) (unpublished writ disposition).